354 So.2d 353 (1977)
STATE of Florida, DEPARTMENT OF REVENUE, Petitioner,
v.
ZUCKERMAN-VERNON CORPORATION, Respondent.
ZUCKERMAN-VERNON CORPORATION, Petitioner,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Respondent.
Nos. 50907, 50908.
Supreme Court of Florida.
November 23, 1977.
Rehearing Denied January 31, 1978.
*354 Robert L. Shevin, Atty. Gen., Tallahassee and Harold F.X. Purnell, Asst. Atty. Gen., Tallahassee, for petitioner State of Florida, Dept. of Revenue.
William L. Rogers, of Snyder, Young, Stern, Barrett & Tannenbaum, North Miami Beach, for respondent Zuckerman-Vernon Corp.
SUNDBERG, Justice.
This cause consists of consolidated petitions for writ of certiorari to review a decision of the District Court of Appeal, First District, reported at 339 So.2d 685. In Case No. 50,907, petitioner, Department of Revenue, alleges the district court's decision to be in conflict with Dominion Land and Title Corporation v. Department of Revenue, 320 So.2d 815 (Fla. 1975), and Associated Dry Goods Corp. v. Department of Revenue, 335 So.2d 832 (Fla. 1st DCA 1976), upon the issues of: (1) whether imposition of the 100% penalty assessment under Section 201.17(2), Florida Statutes (1975),[1] is mandatory; and (2) whether the district court's reduction of the 100% penalty from $55,649.70 to $5,000 was proper in the instant case. In Case No. 50,908, petitioner, Zuckerman-Vernon Corporation, alleges that the same district court decision conflicts with River Park Joint Venture v. Dickinson, 303 So.2d 654 (Fla. 1st DCA 1974), upon the issue of whether conveyance of the property in question was by a trustee not pursuant to a sale and, therefore, was exempt from the documentary stamp tax.[2] We have jurisdiction, Article V, Section 3(b)(3), Florida Constitution. Pursuant to Fla.App. *355 Rule 2.1a.(2)(a), these cases were consolidated for consideration.[3]
The relevant facts were articulated in the district court's opinion:
Zuckerman-Vernon Corp. has petitioned for review of the Department's assessment of documentary stamp taxes in the amount of $55,649.70 and a penalty in the same amount for petitioner's failure to affix documentary stamps to a deed from Bayshore 21, Inc., to petitioner and its joint venturer, Marvin Glick. .. . Petitioner insists that the conveyance from Bayshore to the joint venturers on August 27, 1973, was but part of the same transaction in which Bayshore acquired the property [on] August 23, 1973, as trustee for the joint venturers. Documentary stamps in the appropriate amount were affixed to the earlier deed.
Petitioner urges that the joint venturers provided Bayshore all the cash required for its acquisition of the property, personally guaranteed Bayshore's mortgage notes and intended that Bayshore should hold only a paper title for the brief period necessary to arrange Bayshore's financing on the strength of the guarantors' credit. The joint venture agreement dated August 23, to which Bayshore was not a party, recited that Bayshore "has taken title" as trustee. The hearing officer noted that interest rates at the time were higher than those which could lawfully be contracted for by an individual.
The hearing officer found as facts that Bayshore contracted to buy in its corporate name, not as trustee or in another representative capacity, placed $500,000.00 earnest money in escrow when executing the purchase and sale agreement, and took title in its own name, not as trustee. The hearing officer found it was Bayshore's funds, borrowed or otherwise, which made the purchase possible and found no evidence of an express trust relationship between Bayshore and the joint venturers. She further found no evidence that Glick provided Bayshore with cash to secure the purchase and sale agreement or, if he did, that he did so as petitioner's joint venturer rather than as Bayshore's principal. 339 So.2d 685, 686.
The district court found competent, substantial evidence to support the hearing officer's determination that Bayshore had not acquired the property as trustee for the joint venture. Therefore, the exemption for a conveyance by a trustee not pursuant to a sale was held inapplicable and the documentary stamp tax assessment was upheld. However, the district court reduced the penalty assessment of $55,649.70, noting:
Though petitioner's proof failed, it took a substantial position and advanced it in good faith with significant supporting evidence. The question was fairly debatable. If the amount of the penalty assessed pursuant to § 201.17(2), F.S., is a matter generally within the discretion of the Department, the record contains no evidence that the Department exercised informed discretion before acting to assess a $55,649.70 penalty.
On this record, we find such a penalty unconscionable. Therefore, in the exercise of our equitable powers, we will permit assessment of a penalty in a lesser and reasonable amount necessary for protection of the State's interest. Dominion Land & Title Corp. v. Department of Revenue, 320 So.2d 815, 818 (Fla. 1975). A penalty of no more than $5,000 is appropriate. 339 So.2d 685, 687.
For the reasons hereinafter expressed, we approve that portion of the district court's decision upholding the finding that the conveyance in issue constituted a sale subject to a documentary stamp tax assessment. However, we do not concur in that part of the decision which reduced the amount of the penalty, and, as later explained, we find that the tax (and therefore the penalty) was miscomputed due to an erroneous calculation of the consideration.
*356 The hearing officer properly concluded that no trust relationship existed between Bayshore and the joint venture. We are not persuaded by the taxpayer's argument that a resulting trust arose out of the transaction. A resulting trust arises where one party pays the consideration for purchase of realty, but title is taken in the name of another. Pyle v. Pyle, 53 So.2d 312 (Fla. 1951); Martin v. Wilson, 115 So.2d 573 (Fla. 1st DCA 1959). In the instant case, the evidence reflects that Bayshore purchased the property with its corporate funds. The taxpayer's guarantee of Bayshore's mortgages on the property cannot be equated with payment of the purchase price necessary to establish a resulting trust. Bayshore was primarily liable on the guaranteed mortgages. Bayshore was relieved of this liability only upon satisfaction of the mortgages which occurred some three to four months after its conveyance of the property to the joint venture.
The taxpayer's contention as to the existence of an express trust must fail for the reason succinctly stated in Columbia Bank for Cooperatives v. Okeelanta Sugar Cooperative, 52 So.2d 670, 672 (Fla. 1951):
An express trust cannot exist unless there is an execution of an intention to create such a trust by the one having legal and equitable dominion over the property made subject to it. (Emphasis supplied)
The joint venture agreement which declared that Bayshore was holding the property in question as trustee for the joint venture, was executed between the taxpayer and Marvin Glick, the owner of the capital stock of Bayshore, on August 23, 1973. Glick, however, executed the agreement in his individual capacity; Bayshore was not a party to the agreement. Since Bayshore's funds were used to purchase the property on August 17, 1973, and Bayshore took title solely in its corporate name, it was impossible for the joint venture to create an express trust in its favor with Bayshore as trustee. The corpus of the trust, the property, was never within the legal or equitable dominion of the taxpayer or Marvin Glick until after Bayshore divested itself of title.
The hearing officer's determination that Bayshore's conveyance to the joint venture was for financial consideration is also supported by the record. The shifting of economic benefit and burden when the taxpayer took subject to the various mortgages at the time of the conveyance, constituted the consideration necessary to invoke the documentary stamp tax under Section 201.02(1), Florida Statutes (1975). Florida Department of Revenue v. De Maria, 338 So.2d 838 (Fla. 1976); Kendall House Apartments, Inc. v. Department of Revenue, 245 So.2d 221 (Fla. 1971). However, the Department miscalculated the amount of the consideration subject to the tax imposed by Section 201.02(1), Florida Statutes (1975). Tax was assessed by the Department predicated on a consideration of $18,550,000. This sum was arrived at by totaling the outstanding principal balance of mortgages encumbering the property at the time of the conveyance to the joint venture. The indebtedness to which the joint venture took subject was represented by (i) a mortgage payable to Prudential Insurance Company in the amount of $12,250,000 which encumbered the property at the time of conveyance from Arthree, Inc. to Bayshore; (ii) a mortgage payable to Security Mortgage Investors in the sum of $5,000,000 secured at the time of conveyance to Bayshore; and (iii) a mortgage payable to Commercial Trading Company, Inc. in the sum of $1,300,000 likewise secured at the time of the conveyance to Bayshore.
The obligation of Bayshore to Security Mortgage Investors was unconditionally guaranteed at its inception by Irwin Zuckerman, Melvin Zuckerman, Arthur Siegel, Harold Vernon, and Marvin Glick. Apparently the two Zuckermans, Siegel and Vernon were the principals in Zuckerman-Vernon Corporation. Glick was the sole shareholder of Bayshore. The obligation of Bayshore to Commercial Trading Company, Inc. was unconditionally guaranteed at its inception by the two Zuckermans, Siegel, Vernon, Glick, and Zuckerman-Vernon Corporation. *357 By the terms of this latter guaranty the guarantors (i) waived any right to require the mortgagee to first proceed against Bayshore or pursue any other remedy, (ii) agreed to direct recourse against them, and (iii) unconditionally guaranteed payment and performance of the obligation. The instrument expressly acknowledged that the loan to Bayshore had been induced by the guarantees.
While it is apparent that the taxpayer had no obligation with respect to the Prudential and Security Mortgage Investors mortgages prior to the conveyance from Bayshore, it is equally apparent that an unconditional obligation on the part of the taxpayer to pay and perform according to the terms of the note and mortgage held by Commercial Trading Company, Inc. existed prior to that conveyance. Consequently, with respect to the Commercial Trading Company, Inc. obligation, there was no shifting of economic burden at the time of the conveyance from Bayshore. Although there may have been a change in the form of the obligation there was no change in its substance. The taxpayer was no more nor less obligated to pay and perform the obligation after the conveyance than before. This portion of the debt, then, is controlled by Straughn v. Story, 334 So.2d 337 (Fla. 1st DCA 1976), cert. discharged Straughn v. Story, 348 So.2d 954 (Fla.), filed July 15, 1977. In that case, as here, the taxpayer had unconditionally and fully guaranteed a mortgage obligation prior to accepting a conveyance of property subject to the lien of such mortgage. The district court correctly distinguished De Maria on the basis that there was no shifting of any burden of payment. It is clear, therefore, that it was improper for the Department to treat the $1,300,000 as consideration or assess documentary stamp tax with respect thereto.
The taxpayer contends that imposition of the 100% penalty pursuant to Section 201.17(2), Florida Statutes (1975), for failure to affix proper documentary stamps to a deed of conveyance is discretionary with the Department. Neither the language of Section 201.17(2) nor the decisions interpreting that provision support the taxpayer's proposition. In Dominion Land and Title Corporation v. Department of Revenue, supra, this Court stated that:
That section requires payment of a penalty equal to the excise tax due upon recording of any document, instrument or paper, which penalty is in addition to payment of the taxes owed but not paid at the time of recording. (Emphasis supplied) 320 So.2d 815, 816.
Accord, Associated Dry Goods Corporation v. Department of Revenue, supra. It is evident, therefore, that imposition of the 100% documentary stamp penalty pursuant to Section 201.17(2), Florida Statutes (1975), is mandatory.
The taxpayer alternatively suggests that Ch. 77-281, Laws of Florida,[4] rather than Section 201.17(2), Florida Statutes *358 (1975), controls as the former constitutes the prevailing law at the time of appellate disposition. Ch. 77-281, Laws of Florida, amended Section 201.17(2) to provide for a 100% penalty "[i]f it is determined by clear and convincing evidence that any part of a deficiency is due to fraud." In all other cases, a penalty equal to 25% of the purchase price of the stamps not affixed shall be assessed. The taxpayer's contention is without merit. Ch. 77-281, Laws of Florida, provides that its provisions shall be effective July 1, 1977. In the instant case, the Department assessed the penalty against the taxpayer in 1973, prior to the effective date of Ch. 77-281. It is a well-established rule of construction that in the absence of clear legislative intent to the contrary, a law is presumed to act prospectively. United States v. Estate of Donnelly, 397 U.S. 286, 90 S.Ct. 1033, 25 L.Ed.2d 312 (1970); Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952); Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977); Keystone Water Co. v. Bevis, 278 So.2d 606 (Fla. 1973). The 1977 Legislature's inclusion of an effective date of July 1, 1977, in Ch. 77-281 effectively rebuts any argument that retroactive application of the law was intended. Furthermore, it is implicit in subparagraph (3) that the Department has no authority to compromise any assessment which had become final on the effective date of Ch. 77-281.
The Department properly concedes the inherent power of the courts to reduce or modify a documentary stamp tax penalty imposed pursuant to Section 201.17(2), Florida Statutes (1975). This Court indisputably recognized the existence of this equitable power in Dominion Land and Title Corporation v. Department of Revenue, supra. The Department argues, however, that the equities of the case at bar did not warrant reduction of the penalty assessed against the taxpayer. We agree with the Department. The facts of this case fail to disclose any equities materially different from those advanced in Dominion Land and Title Corporation v. Department of Revenue, supra, where the Court upheld imposition of the 100% penalty. The appellant in Dominion handled the closing of a real estate transaction and acted as the title insuring agent for its principal. At the time of closing, appellant had received sufficient funds from its principal to cover all recording costs, including the necessary documentary stamps. However, when preparing a list of the approximate fees and taxes due upon recordation of the documents involved in the transaction, appellant inadvertently omitted an amount for purchase of the requisite tax stamps. Despite appellant's good faith failure to record the deed with the appropriate tax stamps affixed thereto, we found insufficient equities to warrant reduction of the $21,230 penalty assessed pursuant to Section 201.17(2).
Nor is this case significantly different from Associated Dry Goods Corp. v. Department of Revenue, supra, where the 100% penalty was sustained. There, the appellant operated department stores within the state of Florida. A major portion of appellant's sales were made pursuant to revolving charge accounts, upon which no documentary stamp taxes were paid. The Department of Revenue assessed a tax upon the charge account obligations pursuant to Section 201.08(2), Florida Statutes (1975),[5] and a penalty in like amount under Section 201.17(2), Florida Statutes (1975). On review in the District Court of Appeal, First District, appellant noted that Section 201.08(2) provides that no documentary stamps *359 are required to be attached to obligations to pay, executed under retail charge accounts. Therefore, the provisions of Section 201.17(2)(b), Florida Statutes (1975), which states that "[p]ayment of penalty to the Department of Revenue equal to the purchase price of the stamps not affixed" were inapplicable, since the subject stamps were not required to be affixed. (Emphasis supplied)
The district court in Associated failed to accept appellant's interpretation of Section 201.17(2)(b), Florida Statutes (1975). Although a literal interpretation of Sections 201.08(2) and 201.17(2)(b) supported appellant's position, the court construed the latter provision to be inconsistent with appellant's contention, holding that:
[T]he legislature intended that those who failed to timely purchase required documentary stamps, whether same were to be "affixed" to a deed or "not affixed" to a charge slip, would be subject to a penalty in the amount not timely purchased. 335 So.2d 832, 834.
The legislative intent as discerned by the district court, therefore, was held to prevail over appellant's literal reading of the statutes.
Assuming the taxpayer's good faith belief that the transfer from Bayshore to the joint venture was exempt from the documentary stamp tax, such belief, without more, will not warrant reduction of the penalty. In addition, the fact that the amount of the penalty was $55,649.70 does not, alone, support the taxpayer's contention that the assessment was inequitable. Under Section 201.17(2), Florida Statutes (1975), the percentage penalty is the same in each case  it increases in direct proportion to the amount of documentary stamps not affixed. Of necessity, therefore, the amount of the penalty will vary in each case depending upon the amount of tax stamps not affixed to the deed. We reject the proposition that a penalty should be reduced in one case and not in another solely because the former involved a failure to affix more tax stamps than the latter. Survival of state government requires strong measures to assure collection of taxes. Given this factor and the difficulties involved in collecting delinquent documentary stamp taxes, the legislature reasonably chose to impose a penalty equal to the amount of the tax not timely paid. See Dominion Land and Title Corporation v. Department of Revenue, supra.
Accordingly, the petition for writ of certiorari is granted and that portion of the decision of the District Court of Appeal, First District, upholding the documentary stamp tax assessment is approved, subject to reduction of that part of the tax and penalty attributable to the $1,300,000 obligation. That portion of the decision reducing the penalty is quashed, and this cause is remanded to the district court for remand to the Department of Revenue with directions to reduce the tax and penalty assessment in accordance with this opinion.
It is so ordered.
ADKINS, Acting C.J., and BOYD, ENGLAND and HATCHETT, JJ., concur.
NOTES
[1] § 201.17(2), Fla. Stat. (1975), reads:

"(2) Any document, instrument, or paper upon which the tax under this chapter is imposed and which, upon audit or at time of recordation, does not bear the proper value of stamps shall subject the person or persons liable for the tax upon the document, instrument or paper to:
(a) Purchase of the stamps not affixed; and
(b) Payment of penalty to the Department of Revenue equal to the purchase price of the stamps not affixed. This penalty is to be in addition to, and not in lieu of any other penalty imposed by law."
[2] § 201.02(1), Fla. Stat. (1975), reads:

"(1) On deeds, instruments, or writings whereby any lands, tenements, or other realty, or any interest therein, shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser, or any other person by his direction, on each $100 of the consideration therefor the tax shall be 30 cents. When the full amount of the consideration for the execution, assignment, transfer, or conveyance is not shown in the face of such deed, instrument, document, or writing, the tax shall be at the rate of 30 cents for each $100 or fractional part thereof of the consideration therefor."
This section has been interpreted as inapplicable to a trustee's conveyance of bare legal title to an interest in realty, without consideration, to the equitable owner thereof. River Park Joint Venture v. Dickinson, supra.
[3] For the purpose of clarity, Zuckerman-Vernon Corporation will hereinafter be referred to as the taxpayer, and the Department of Revenue, as the Department.
[4] Ch. 77-281, Laws of Florida, reads:

"Section 1. Subsections (2) and (3) of section 201.17, Florida Statutes, 1976 Supplement, are amended to read:
"201.17 Penalties for failure to pay tax required. 
(2) Any document, instrument, or paper upon which the tax under this chapter is imposed and which, upon audit or at time of recordation, does not bear the proper value of stamps shall subject the person or persons liable for the tax upon the document, instrument, or paper to:
(a) Purchase of the stamps not affixed.
(b) Payment of a penalty to the Department of Revenue equal to 25 percent of the purchase price of the stamps not affixed. If it is determined by clear and convincing evidence that any part of a deficiency is due to fraud, there shall be added to the tax as a civil penalty, in lieu of the aforementioned penalty under this paragraph, an amount equal to 100 percent of the deficiency. These penalties are to be in addition to, and not in lieu of, any other penalties imposed by law.
(c) Payment of interest to the Department of Revenue, accruing from the date of recordation until paid, at the rate of 1 percent per month or fraction thereof, based on the purchase price of the stamps not affixed.
(3) The department may compromise any penalty on any proposed assessment which has not become final on the effective date of this act if its investigation reveals that the penalty would be too severe or unjust.
"Section 2. This act shall take effect July 1, 1977."
[5] § 201.08(2), Fla. Stat. (1975), reads:

"(2) On promissory notes, nonnegotiable notes, written obligations to pay money, or other compensation, made, executed, delivered, sold, transferred, or assigned in the state, in connection with sales made under retail charge account services, incident to sales which are not conditional in character and which are not secured by mortgage or other pledge of purchaser, the tax shall be 15 cents on each $100 or fraction thereof of the gross amount of the indebtedness evidenced by said instruments, payable quarterly on such forms and under such rules and regulations as may be promulgated by the Department of Revenue. No documentary stamps shall be required to be attached to instruments under the provisions of this subsection."