932 So.2d 344 (2006)
FLORIDA HOSPITAL WATERMAN, INC., etc., Petitioner,
v.
Teresa M. BUSTER, as personal representative of the Estate of Larry Buster, Deceased, et al., Respondents.
No. 5D05-2195.
District Court of Appeal of Florida, Fifth District.
March 10, 2006.
*347 Mason H. Grower, III, Jack E. Holt and Ramon Vazquez of Grower, Ketcham, Rutherford, Bronson, Eide & Telan, P.A., Orlando, for Petitioner.
Christopher V. Carlyle, Shannon McLin Carlyle and Gilbert S. Goshorn, Jr., of counsel, of The Carlyle Appellate Law Firm, The Villages, for Respondent Teresa M. Buster.
Stephen H. Grimes and Jerome W. Hoffman of Holland & Knight LLP, Tallahassee, Amicus Curiae for Florida Hospital Association, Inc.
Philip M. Burlington of Burlington & Rockenbach, P.A., West Palm Beach and Lincoln J. Connolly of Rossman, Baumberger, Reboso & Spier, P.A., Miami, Amicus Curiae for Floridians for Patient Protection, Inc.
SAWAYA, J.
Of the several constitutional amendments approved by the voters in 2004,[1] we are called upon to consider the provisions of article X, section 25 of the Florida Constitution, commonly known as Amendment 7 or the "Patients' Right To Know Amendment." Amendment 7 provides, in pertinent part, that "patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." Because Amendment 7 was placed on the ballot through the citizens' initiative process,[2] its provisions did not emerge from the cauldron *348 of the legislative process where, after debate and deliberation, the body politic bespeaks the will of the people. Through adoption of Amendment 7, the people have spoken directly for themselves.
Amendment 7 has spawned a frenzy of litigation wherein litigants and trial courts have struggled to discern its purpose and the extent of its application. The litigation now before this court presents us with the following issues to resolve: 1) does Amendment 7 preempt statutory privileges afforded health care providers' self-policing procedures to the extent that information obtained through those procedures is discoverable during the course of litigation; 2) is Amendment 7 self-executing; and 3) should Amendment 7 be applied prospectively or retroactively. In essence, resolution of these issues involves a search for the intended meaning of the provisions of Amendment 7. That this is no easy task is a fact best illustrated by the disparate conclusions reached by the several circuit courts that have attempted to decide these issues.[3] We undertake resolution of these issues by discussing the factual and procedural background and the appropriate standard of review, after which we analyze each issue in the order previously presented. We parenthetically note that the issue whether the information gathered in accordance with the provisions of Amendment 7 is admissible into evidence in trial proceedings is not an issue before us and will not be addressed.

Factual and Procedural Background
A detailed discussion of the underlying facts of the litigation between the parties is not necessary to resolve the issues presented to us. Suffice it to say that Respondent, Teresa Buster, as personal representative of the estate of Larry Buster, brought a medical malpractice action against Florida Hospital Waterman, Inc. (the Hospital) and the other respondents, Jeffrey B. Keeler, M.D., and Keller & Goodman, M.D., P.A. As part of the discovery, Buster sought production of documents relating to the investigation of the decedent's death and any medical incidents of negligence, neglect, or default of any health care provider who rendered services to the decedent. The Hospital objected and filed a motion for a protective order, relying on various statutory privileges and arguing that Amendment 7 does not apply.
Emanating from a hearing on the objection and motion was the trial court's order overruling the Hospital's objection and requiring the Hospital to produce the discovery that the Hospital claims was privileged. The court held that Amendment 7 is self-executing, should be retroactively applied, and any legislation to the contrary is subordinate to the constitutional amendment. Accordingly, the court ordered the production of documents and information pertaining to incidents dating back to December 25, 2000.[4] Florida Hospital seeks *349 certiorari review of that order, arguing that it constitutes a departure from the essential requirements of law, causing irreparable harm because it requires the production of privileged information and improperly gives self-executing, retroactive effect to Amendment 7.

Standard of Review
"While several standards of review are utilized to review petitions for writs of certiorari, when an appellate court reviews [a] non-appealable non-final order rendered by a trial court, the party seeking review must demonstrate that the trial court departed from the essential requirements of law and that the resulting harm is irreparable and cannot be remedied on appeal following final judgment." Dep't of Children & Families v. L.D., 840 So.2d 432, 435 (Fla. 5th DCA 2003) (citing Belair v. Drew, 770 So.2d 1164 (Fla.2000); Jaye v. Royal Saxon, Inc., 720 So.2d 214 (Fla. 1998); Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987); S.H. v. Dep't of Children & Families, 769 So.2d 452 (Fla. 5th DCA 2000)). Hence, this court has consistently held that certiorari is the appropriate vehicle to challenge non-final orders compelling the discovery of information claimed to be privileged. See Cape Canaveral Hosp., Inc. v. Leal, 917 So.2d 336 (Fla. 5th DCA 2005); Beverly Enters.-Fla., Inc. v. Ives, 832 So.2d 161 (Fla. 5th DCA 2002), review denied, 845 So.2d 890 (Fla.2003).

Does Amendment 7 Preempt Statutory Privileges Afforded Health Care Providers' Self-policing Procedures to the Extent that Information Obtained in Accordance with Those Procedures is Discoverable During the Course of Litigation
Because resolution of this issue requires that we determine the meaning of Amendment 7, we proceed with our analysis de novo. Zingale v. Powell, 885 So.2d 277 (Fla.2004). Applying rules that parallel the principles that guide us in statutory interpretation, we must forego any construction that would defeat the intent of the framers of the amendment and the people who enacted it. Id. at 282 ("Such a provision must never be construed in such manner as to make it possible for the will of the people to be frustrated or denied."); see also Coastal Fla. Police Benev. Ass'n, Inc. v. Williams, 838 So.2d 543, 549 (Fla. 2003). Amendment 7 provides:
§ 25. Patients' right to know about adverse medical incidents.
(a) In addition to any other similar rights provided herein or by general law, patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident.
(b) In providing such access, the identity of patients involved in the incidents shall not be disclosed, and any privacy restrictions imposed by federal law shall be maintained.
(c) For purposes of this section, the following terms have the following meanings:
(1) The phrases "health care facility" and "health care provider" have the meaning given in general law related to a patient's rights and responsibilities.
(2) The term "patient" means an individual who has sought, is seeking, is undergoing, or has undergone care or treatment in a health care facility or by a health care provider.

*350 (3) The phrase "adverse medical incident" means medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient, including, but not limited to, those incidents that are required by state or federal law to be reported to any governmental agency or body, and incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees.
(4) The phrase "have access to any records" means, in addition to any other procedure for producing such records provided by general law, making the records available for inspection and copying upon formal or informal request by the patient or a representative of the patient, provided that current records which have been made publicly available by publication or on the Internet may be "provided" by reference to the location at which the records are publicly available.
Art. X, § 25, Fla. Const.
We must read these provisions in pari materia and construe the amendment as a whole "in order to ascertain the general purpose and meaning of each part; each subsection, sentence, and clause must be read in light of the others to form a congruous whole." Dep't of Envtl. Prot. v. Millender, 666 So.2d 882, 886 (Fla.1996); see also Bush v. Holmes, 919 So.2d 392 (Fla.2006); Physicians Healthcare Plans, Inc. v. Pfeifler, 846 So.2d 1129, 1134 (Fla. 2003). Unlike statutory construction, "we have an obligation to provide `a broader and more liberal construction' of constitutional provisions." Coastal Fla. Police Benev. Ass'n, Inc., 838 So.2d at 549 ("`Consequently, courts are far less circumscribed in construing language in the area of constitutional interpretation than in the realm of statutory construction. When adjudicating constitutional issues, the principles, rather than the direct operation or literal meaning of the words used, measure the purpose and scope of a provision.'") (quoting Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n, 489 So.2d 1118, 1119 (Fla.1986)).
Subsection (a) provides that "patients" may obtain "any records" relating to an "adverse medical incident." The term "patient" is defined in very broad terms to include any individual who has received or is currently receiving medical care or treatment. Art. X, § 25(c)(2), Fla. Const. The term "adverse medical incident" means "medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient...." Art. X, § 25(c)(3), Fla. Const. The amendment's use of the terms "medical negligence" and "intentional misconduct," and its references to acts that caused or could have caused death or injury and to patients who have previously received medical care, clearly reveals to us that such information may be obtained during the course of litigation by the patient through the discovery process. We also note that subsection (c)(4) provides that the information may be obtained by an informal request, such as a letter, or by a formal request, which certainly includes a formal discovery request made during the course of litigation. Moreover, subsection (c)(4) also allows the request to be made by the patients or their representatives, which would include lawyers. Reading the provisions of Amendment 7 in pari materia so it forms a congruous whole, and construing the provisions broadly and *351 giving them a more liberal interpretation than we would a statute, we come to the conclusion that Amendment 7 preempts the statutory privileges afforded health care providers regarding their self-policing procedures to the extent that such information is obtainable through a formal discovery request made by a patient or a patient's legal representative during the course of litigation.
We believe that this conclusion comports with common sense, which is certainly applicable when attempting to discern the intent of those who enacted Amendment 7. Millender, 666 So.2d at 885-86; Plante v. Smathers, 372 So.2d 933, 936 (Fla.1979) (citing In re Advisory Opinion to the Governor, 276 So.2d 25 (Fla.1973)). It would make little sense to allow a patient access to the information prior to the institution of legal proceedings against a health care provider, but not during the course of litigation. Certainly if a patient may obtain the information and then proceed with litigation, we can find no discernable reason why Amendment 7 would prohibit access to the information by a patient during the progress of the litigation. "[A]n interpretation of a constitutional provision which will lead to an absurd result will not be adopted when the provision is fairly subject to another construction which will accomplish the manifest intent and purpose of the people." Plante, 372 So.2d at 936 (citing City of Miami v. Romfh, 66 Fla. 280, 63 So. 440 (1913)).
It is also appropriate for us to examine the "`explanatory materials available to the people as a predicate for their decision as persuasive of their intent.'" Millender, 666 So.2d at 886 (quoting Plante, 372 So.2d at 936). In Advisory Opinion to the Attorney General Re Patients' Right To Know About Adverse Medical Incidents, 880 So.2d 617 (Fla. 2004), the court quoted the summary for the proposed amendment as follows:
Current Florida law restricts information available to patients related to investigations of adverse medical incidents, such as medical malpractice. This amendment would give patients the right to review, upon request, records of health care facilities' or providers' adverse medical incidents, including those which could cause injury or death. Provides that patients' identitie [sic] should not be disclosed.
Id. at 619.[5] This ballot summary states that the effect of the amendment is to give patients a right of access to information previously denied them under Florida law. This is an obvious reference to the statutory privileges that guarantee confidentiality of the self-policing processes of health care providers,[6] which the courts have carefully *352 protected from the discovery process during litigation.[7] We believe that this ballot summary is a clear statement that Amendment 7 is intended to change Florida law by eliminating those privileges to the extent that such information is discoverable during the course of litigation between a patient and his or her health care provider. Moreover, the reference to medical malpractice in the summary indicates to those deciding whether to vote for Amendment 7 that the information would be made available for investigations of medical malpractice actions. We believe this means investigations conducted before and during the litigation process.
Despite this rather clear statement of purpose, the Hospital continues to view this issue through the prism of privilege and confidentiality. The Hospital contends that preservation of the legislatively-established privileges that enhance self-policing by health care providers for the betterment of the patients they serve is a firmly-established policy that is of paramount importance and the people of Florida could not have meant to abrogate such a policy, especially one so carefully guarded by the courts. This is evident, continues the Hospital, because the text of Amendment 7 does not explicitly state that as its declared purpose. Interpreting the text of Amendment 7 differently and more broadly, we disagree. Further, what the Legislature gives through its enactments and the courts protect through their decisions, the people, through the constitutional amendment process, can certainly take away. See State ex rel. McIver v. Swank, 152 Fla. 565, 12 So.2d 605, 609 (1943) ("This is a case where the Legislature gave and the Legislature took away."). We believe that is what the people of Florida intended when they inserted Amendment 7 into our constitution. Through this amendment, the people have clearly expressed their preference for freedom of information regarding adverse medical incidents over the privileges that protect the self-policing processes enacted by the Legislature and protected by the courts. The people have made their choice, and it is not for us to question the wisdom of it. We note, parenthetically, that Amendment 7 does not profess to affect the work-product and attorney-client privileges, and the parties do not contend otherwise.
*353 Effective June 20, 2005, the Legislature enacted section 381.028, Florida Statutes, to implement the provisions of Amendment 7. In doing so, the Legislature expressed an interpretation of Amendment 7 contrary to ours. It is the prerogative of the courts to interpret the Florida Constitution, including its amendments, by discerning the intent of the people who enact its provisions, and we have done so. Moreover, the provisions of Amendment 7, emanating from the citizens' initiative process, were not tested by a formalistic catechism of legislative debate where inquiry is made and answers provided regarding the purpose and meaning of the proposal sought to be enacted into law. Hence, the Legislature is in no position to claim superior interpretive knowledge of Amendment 7, as it sometimes does in instances where it enacts subsequent remedial legislation to correct what it perceives to be an erroneous interpretation of prior legislation by the courts. Equally important, when the people have spoken and expressed their will through the constitutional amendment process, the Legislature is not free to abrogate it through subsequent enactments. See Austin v. State ex rel. Christian, 310 So.2d 289, 293 (Fla.1975) ("A statute enacted by the Legislature may not constrict a right granted under the ultimate authority of the Constitution."). While we express no opinion regarding the processes established in section 381.028 to secure the requested information pursuant to Amendment 7, we do reject the interpretation of that amendment by the Legislature.
We find support for our conclusion in the Florida Supreme Court's advisory opinion regarding Amendment 7 rendered in Advisory Opinion to the Attorney General Re Patients' Right To Know About Adverse Medical Incidents, 880 So.2d at 620-21, wherein the court stated, "Unquestionably, the amendment would affect sections 395.0193(8) and 766.101(5) of the Florida Statutes (2003), which currently exempt the records of investigations, proceedings, and records of the peer review panel from discovery in a civil or administrative action. Indeed, this is a primary purpose of the amendment." While we consider this opinion for what it is  an advisory opinion  we also consider that the Florida Supreme Court views its advisory opinions as "`frequently very persuasive and usually adhered to.'" Barley v. S. Fla. Water Mgmt. Dist., 823 So.2d 73, 82 (Fla.2002) (quoting Lee v. Dowda, 155 Fla. 68, 19 So.2d 570, 572 (1944)). Specifically, "[r]egarding advisory opinions concerning initiative opinions, . . . `although our advisory opinions are not strictly binding precedent in the most technical sense, only under extraordinary circumstances will we revisit an issue decided in our earlier advisory opinions.'" Id. at 82 (quoting Ray v. Mortham, 742 So.2d 1276, 1285 (Fla.1999)). Hence, we believe that the statement made by the Florida Supreme Court is persuasive.

Retroactive or Prospective Application
The Hospital convincingly argues that Amendment 7 should not be applied retroactively. "When considering whether a statute should be retroactively applied, the courts should determine 1) whether there is clear evidence that the Legislature intended to apply the statute retrospectively; and 2) whether retroactive application is constitutionally permissible." Campus Commc'ns, Inc. v. Earnhardt, 821 So.2d 388, 395 (Fla. 5th DCA 2002) (citing Metro. Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494 (Fla.1999)), review denied, 848 So.2d 1153 (Fla.2003); Promontory Enters., Inc. v. S. Eng'g & Contracting, Inc., 864 So.2d 479 (Fla. 5th DCA 2004). We believe that this test applies equally to constitutional amendments.
*354 The first inquiry necessarily requires that we look to the provisions of Amendment 7 to determine whether it provides for retroactive application. It does not. A law is presumed to operate prospectively absent a clear legislative expression requiring that the statute be retroactively applied. State v. Lavazzoli, 434 So.2d 321, 323 (Fla.1983) ("Nowhere in either article I, section 12 as amended or in the statement placed on the November ballot is there manifested any intent that the amendment be applied retroactively. Therefore, the amendment must be given prospective effect only.") (footnote omitted); State, Dep't of Revenue v. Zuckerman-Vernon Corp., 354 So.2d 353, 358 (Fla.1977); Promontory, 864 So.2d at 483; Earnhardt. Moreover, the amendment specifically provided that it was to become effective on the date it was approved by the electorate, which was November 2, 2004. We believe this is significant to our analysis because the inclusion of an effective date "effectively rebuts any argument that retroactive application of the law was intended." State, Dep't of Revenue, 354 So.2d at 358; see also In re Name Change Petition of Mullin, 892 So.2d 1214, 1215 (Fla. 2d DCA 2005); Promontory; Earnhardt. Accordingly, we have found nothing that inhibits us from indulging the presumption that Amendment 7 should be applied prospectively.
Although the second inquiry presumes that the answer to the first requires retroactive application, we will nevertheless, address it. Retroactive application would not be constitutionally permissible because it vitiates a vested right that health care providers have in the confidentiality of the information generated through the self-evaluative process. Because it is generally constitutionally impermissible to abrogate a vested right by retroactive application of a law, see Earnhardt, we believe that Amendment 7 should be prospectively applied. Buster argues that the amendment is remedial and procedural, thereby exempting it from the aforementioned rule. We disagree. As we have previously stated, Amendment 7 constitutes a change in the law based on an informed choice made by the electorate. Therefore, it is not remedial. As to the argument that the amendment is procedural rather than substantive, "substantive law prescribes duties and rights and procedural law concerns the means and methods to apply and enforce those duties and rights." Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994); see also Shaps v. Provident Life & Acc. Ins. Co., 826 So.2d 250, 254 (Fla.2002). Because Amendment 7 gives patients the right to information regarding adverse medical incidents and places a duty on the health care providers to provide it, it is a substantive amendment that should not be retroactively applied.
Our analysis of the second inquiry, like the first, leads us to the same conclusion, which is that Amendment 7 should be applied prospectively. Prospective application of Amendment 7 means that information and documents created on or after the effective date of the amendment, which is November 2, 2004, are obtainable and discoverable during the course of litigation by a patient against a health care provider.

Whether Amendment 7 is Self-Executing
The test for determining whether a constitutional provision is self-executing was established in Gray v. Bryant, 125 So.2d 846 (Fla.1960), wherein the court explained:
The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not *355 the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment. If the provision lays down a sufficient rule, it speaks for the entire people and is self-executing. The fact that the right granted by the provision may be supplemented by legislation, further protecting the right or making it available, does not of itself prevent the provision from being self-executing.
Id. at 851 (citations omitted). The court further held that there is a presumption in favor of finding constitutional amendments to be self-executing. This presumption is premised on the notion that "in the absence of such presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people." Id.
We believe that Amendment 7 sufficiently satisfies this test to leave undisturbed the presumption in favor of self-execution. The amendment contains sufficiently de-tailed definitions of the pertinent terms and adopts a fairly narrow policy of allowing access to information regarding adverse medical incidents to patients, including those who seek discovery during the course of litigation against their health care providers. We also believe that the reference to the procedures provided by general law in subsection (c)(4) ("The phrase `have access to any records' means, in addition to any other procedure for producing such records provided by general law. . . .") is a clear expression of the people's intent that existing law was sufficient to implement the provisions of the amendment and that no further legislation was necessary. For example, current legislation should be sufficient to address the issue of fees and timeliness of compliance. See, e.g., § 395.3025, Fla. Stat. (2004); § 456.057(4), (16), Fla. Stat. (2004); § 766.204, Fla. Stat. (2004). Moreover, in the realm of litigation and the discovery process that is part of it, there are sufficient rules in place that will allow parties to obtain requested information under Amendment 7 in an orderly and lawful fashion. We see no need for further rules and regulations to govern the discovery procedures.
We are also of the view that holding Amendment 7 is not self-executing would frustrate the intent of the people who enacted it. We note that in addition to the reference to the procedure for providing records already established by general law in subsection (c)(4), the people of Florida voted to make Amendment 7 effective upon approval, which left no time for implementing legislation to be enacted. It is apparent to us that these factors clearly indicate that the people intended Amendment 7 to be self-executing. This conclusion is further supported by the stated purpose of the amendment to abrogate the law that prohibited access to information regarding adverse medical incidents during the course of discovery. Given the people's intent to abrogate those laws previously enacted by the Legislature, we do not believe they intended for subsequent legislation to be enacted to help implement that intent and purpose. In essence, the people sought to eliminate certain legislative provisions rather than add more.

Conclusion
We believe that Amendment 7 heralds a change in the public policy of this state to lift the shroud of privilege and confidentiality in order to foster disclosure of information that will allow patients to better determine from whom they should seek health care, evaluate the quality and fitness of health care providers currently rendering service to them, and allow them *356 access to information gathered through the self-policing processes during the discovery period of litigation filed by injured patients or the estates of deceased patients against their health care providers. We have come to this conclusion because we are obliged to interpret and apply Amendment 7 in accord with the intention of the people of this state who enacted it, and we have done so. It is not for us to judge the wisdom of the constitutional amendments enacted or the change in public policy pronounced through those amendments, even in instances where the change involves abrogation of long-standing legislation that establishes and promotes an equally or arguably more compelling public policy. See Sebring Airport Auth. v. McIntyre, 783 So.2d 238, 244 (Fla.2001).
Hence, what the Legislature has given through its enactments and the courts have enforced through their decisions, the people can take away through the amendment process to our state constitution. Moreover, what the people provide in their constitution, the Legislature and the courts may not take away through subsequent legislation or decision. Therefore, we are not much impressed or persuaded by the legislative interpretation of Amendment 7 pronounced in section 381.028.
We conclude that the trial court correctly held that Amendment 7 is self-executing and allows for the discovery, during the course of litigation by a patient against a health care provider, of information and documents that emanate from the self-policing processes of health care providers. In so ruling, the trial court did not depart from the essential requirements of the law and, therefore, as to these two issues, we deny the Hospital's petition for writ of certiorari. However, the trial court did depart from the essential requirements of law in ruling that Amendment 7 should be applied retroactively, thereby allowing discovery of information and documents emanating from the self-policing processes dating back to December 25, 2000. Because this ruling allows for the discovery of privileged information, we believe that this erroneous ruling causes irreparable harm that cannot be remedied on appeal following entry of final judgment at the conclusion of the case. Therefore, as to that issue, we grant the petition for writ of certiorari, quash that part of the trial court's order, and remand this case to the trial court for further proceedings.

Certified Questions
Because our interpretation of Amendment 7 brings about a significant change in Florida law that will have impact statewide on litigation filed by patients against their health care providers, we hereby certify the following questions to the Florida Supreme Court as matters of great public importance:
1) DOES AMENDMENT 7 PREEMPT STATUTORY PRIVILEGES AFFORDED HEALTH CARE PROVIDERS' SELF-POLICING PROCEDURES TO THE EXTENT THAT INFORMATION OBTAINED THROUGH THOSE PROCEDURES IS DISCOVERABLE DURING THE COURSE OF LITIGATION BY A PATIENT AGAINST A HEALTH CARE PROVIDER?
2) IS AMENDMENT 7 SELF-EXECUTING?
3) SHOULD AMENDMENT 7 BE APPLIED RETROACTIVELY?
Petition For Writ Of Certiorari Denied in Part; Granted in Part; Order Quashed in Part; Remanded.
ORFINGER and TORPY, JJ., concur.
NOTES
[1] See, e.g., Art. I, § 26, Fla. Const. (entitled "Claimant's right to fair compensation") (placing restrictions on the amount of attorneys' fees in medical malpractice actions).
[2] There are several sources from which a constitutional amendment may originate. See Armstrong v. Harris, 773 So.2d 7, 11 (Fla. 2000) ("Proposed amendments to the Florida Constitution may originate in any of several sources, including the Legislature, revision commission, citizen initiative, or constitutional convention.") (footnotes omitted). Proposed Amendment 7 was placed on the ballot through the citizens' initiative process pursuant to the provisions of article XI, section 3 of the Florida Constitution.
[3] See, e.g., Sardes v. S. Broward Hosp. Dist., No. 03-5290 (Fla. 17th Cir. Apr. 7, 2005) (2005 WL 831964); Brown v. Graham, No. 501999 (Fla. 15th Cir. Mar. 18, 2005) (2005 WL 900722); McHale v. Tenewitz, No. 052003 (Fla. 18th Cir. Feb. 28, 2005) (2005 WL 900744); Michota v. Bayfront Med. Ctr., Inc., No. 04-1057 (Fla. 6th Cir. Feb. 24, 2005) (2005 WL 900771); Rusiecki v. Jackson-Curtis, No. 03-008570 (Fla. 6th Cir. Jan. 31, 2005) (2005 WL 408133); Richardson v. Nath, No. 04-006970 (Fla. 6th Cir. Jan. 18, 2005) (2005 WL 408132); Bridgman v. Health Mgmt. Assocs., Inc., No. 51-04-CA-59-ES (Fla. 6th Cir. Jan. 14, 2005) (2005 WL 900630).
[4] Specifically, the trial court ordered the Hospital to

produce the requested records, including those related to this incident, as follows: The discovery is limited to a four (4) year period to December 25, 2000. Only documents and information related to incidents involving gastrointestinal bleeding adverse incidents and involving adverse incidents occurring on Holidays shall be provided.
[5] The stated purpose of Amendment 7 has similar provisions. It states in pertinent part:

The Legislature has ... restricted public access to information concerning a particular health care provider's or facility's investigations, incidents or history of acts, neglects, or defaults that have injured patients or had the potential to injure patients. This information may be important to a patient. The purpose of this amendment is to create a constitutional right for a patient or potential patient to know and have access to records of a health care facility's or provider's adverse medical incidents, including medical malpractice and other acts which have caused or have the potential to cause injury or death.
Advisory Opinion to the Atty. Gen. Re Patients' Right To Know About Adverse Med. Incidents, 880 So.2d 617, 618 (Fla.2004).
[6] The privileges referred to are the numerous laws that prohibit discovery of various components of a hospital's self-evaluation process, which the Legislature believes are essential to meaningful self-regulation by health care providers in general. See, e.g., § 766.101(5), Fla. Stat. (2005) (medical review committee privilege); § 766.1016(2), Fla. Stat. (2005) (patient safety data); § 459.016(3), Fla. Stat. (2005) (reports of disciplinary actions); § 400.118, Fla. Stat. (2005) (quality assurance nursing homes); § 395.0191(8), Fla. Stat. (2005) (staff membership and clinical privileges); § 395.0197(4), (6)(c), (7), (13), Fla. Stat. (2005) (internal risk management); § 395.0193(8), Fla. Stat. (2005) (peer review). In addition, the Legislature has immunized the participants of such self-evaluation procedures from liability for actions taken. See, e.g., § 395.0191(7), Fla. Stat. (2005) (credentialing); § 395.0193(5), Fla. Stat. (2005) (peer review process); § 766.101(3), Fla. Stat. (2005) (medical review committee process).
[7] See, e.g., Cruger v. Love, 599 So.2d 111, 114 (Fla.1992) (acknowledging previous holding that the discovery privilege for peer review committees is "`designed to provide that degree of confidentiality necessary for the full, frank medical peer evaluation which the legislature [has] sought to encourage.'") (quoting Holly v. Auld, 450 So.2d 217, 219-20 (Fla. 1984)); Tenet Healthsystem Hosps., Inc. v. Taitel, 855 So.2d 1257, 1258 (Fla. 4th DCA 2003) (same); Beverly Enters.-Fla., Inc. v. Ives, 832 So.2d 161 (Fla. 5th DCA 2002), review denied, 845 So.2d 890 (Fla.2003); Miami Heart Inst. v. Reis, 638 So.2d 530, 532 (Fla. 3d DCA 1994) ("The constancy of the privilege [afforded medical review committees] is thus far absolute, [regardless of] the nature of the litigation or the procedural posture of the case. . . ."). The privileges have been enforced, even though Florida courts have recognized that to do so impinges on the rights of some civil litigants to discovery of information that might be useful, or even essential, to their causes. See Holly, 450 So.2d at 220.