960 So.2d 820 (2007)
MORTON PLANT HOSPITAL ASSOCIATION, INC., Petitioner,
v.
Shelby SHAHBAS, a minor, by and through Kathryn Shahbas, individually and as mother and natural guardian of Shelby Shahbas, a minor, John Shahbas, individually and as father and natural guardian of Shelby Shahbas, a minor, Patricia St. John, M.D., Bay Area Women's Care, Inc., and Kristin Beard, R.N. n/k/a Kristin Kilgore, R.N., Respondents.
No. 2D06-3856.
District Court of Appeal of Florida, Second District.
June 27, 2007.
*822 James A. Martin, Jr., Nancy S. Paikoff, and Jeffrey W. Gibson of Macfarlane Ferguson & McMullen, Clearwater, for Petitioner.
Philip M. Burlington and Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, and Christian D. Searcy and Karen E. Terry of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for Respondents Shelby Shahbas, Kathryn Shahbas, and John Shahbas.
No appearance for Respondents Patricia St. John, M.D., Bay Area Women's Care, Inc., and Kristin Beard, R.N., n/k/a Kristin Kilgore, R.N.
CANADY, Judge.
Morton Plant Hospital Association, Inc. (the hospital), seeks certiorari review of a trial court order denying its objections to requests for documents made by the Shahbases, *823 the plaintiffs in a medical malpractice action against the hospital; Patricia St. John, M.D.; Bay Area Women's Care, Inc.; and Kristin Kilgore, R.N. We deny the petition in part and grant the petition to the extent that the trial court ordered discovery of privileged records that do not contain information about any adverse medical incidents.

I. Background

The Shahbases filed a complaint against the above defendants alleging negligence that led to injuries sustained by Shelby Shahbas during her birth in December 2002. During discovery, the Shahbases filed a request to produce, seeking nine different categories of documents. The request included records from the hospital relating to the incident at issue, incidents involving Dr. St. John, the credentialing and recredentialing of Dr. St. John, the policies and procedures of the hospital, and medical incidents in the hospital generally. With the exception of the credentialing files, the Shahbases sought records created or filed after November 2, 2004, the effective date of Amendment 7 of the Florida Constitution. See art. X, § 25, Fla. Const. (entitled "Patients' right to know about adverse medical incidents"). The hospital objected to most of the requests on the bases that the documents were irrelevant and privileged and that their production would be overly burdensome. The hospital also served a motion for protective order, which sought protection from the requests for records relating to Dr. St. John.
The trial court held a hearing on the hospital's objections and the motion for protective order. After the hearing, by written order entitled "Order Regarding Amendment 7 Issues" the trial court denied the hospital's objections and motion for protective order and ordered the hospital to respond to the Shahbases' requests within forty-five days.

II. Certiorari Jurisdiction

"Certiorari review `is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal.'" Harley Shipbuilding Corp. v. Fast Cats Ferry Serv., LLC, 820 So.2d 445, 448 (Fla. 2d DCA 2002) (quoting Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995)). Discovery of certain types of information may cause material injury of an irreparable nature, including "cat out of the bag" material that could be used to injure another person or party outside the context of the litigation as well as material protected by privilege. Langston, 655 So.2d at 94. "[A] petition for writ of certiorari is appropriate to remedy situations in which hospitals have been wrongly ordered to disclose statutorily privileged documents." Tarpon Springs Gen. Hosp. v. Hudak, 556 So.2d 831, 832 (Fla. 2d DCA 1990).

III. Amendment 7

Article X, section 25, subsection (a) of the Florida Constitution provides: "In addition to any other similar rights provided herein or by general law, patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." (Emphasis added.) This provision is referred to as Amendment 7 and was approved by the voters in the general election on November 2, 2004.
In Florida Hospital Waterman, Inc. v. Buster, 932 So.2d 344, 348 (Fla. 5th DCA), rev. granted, 926 So.2d 1269 (Fla.2006), the court considered whether "Amendment 7 preempt[s] statutory privileges afforded *824 health care providers' self-policing procedures to the extent that information obtained through those procedures is discoverable during the course of litigation." The court concluded that "[t]hrough this amendment, the people have clearly expressed their preference for freedom of information regarding adverse medical incidents over the privileges that protect the self-policing processes enacted by the Legislature and protected by the courts." Id. at 352. The court relied on Advisory Opinion to the Attorney General Re Patients' Right to Know About Adverse Medical Incidents, 880 So.2d 617, 620-21 (Fla. 2004), in which the supreme court stated that the primary purpose of Amendment 7 is to affect statutes that currently exempt the records of investigations, proceedings, and records of the peer review panel from discovery in a civil or administrative action. Buster, 932 So.2d at 353. The Buster court concluded that Amendment 7 is intended to eliminate privileges that previously guaranteed confidentiality of the self-policing process of health care providers. 932 So.2d at 351-52 n. 6. The Buster court certified as a question of great public importance whether Amendment 7 preempts statutory privileges afforded to health care providers' self-policing procedures in the context of litigation discovery. Id. at 356. The court also certified two other questions relating to the application of Amendment 7 that are not at issue in this case. Id.

IV. Analysis

A. The Claim that Documents Created or Filed After November 2, 2004, Are Irrelevant

The hospital first claims that the documents sought by the Shahbases created or filed after November 2, 2004, are irrelevant and immaterial because the incident at issue occurred in December 2002. The hospital argues that the Shahbases based their request solely on Buster and did not offer any showing that the records are relevant or that they could lead to relevant material.
The Shahbases respond that relevancy is not the standard for discovery of information pursuant to Amendment 7 and that patients have the right to obtain records regardless of when treatment was provided. The Shahbases also argue that there may be relevant documents after November 2, 2004, because the investigation of the December 2002 incident may not have begun until then or may have lasted past November 2, 2004.
Traditionally, "discovery should be denied when it has been established that the information requested is neither relevant to any pending claim or defense nor will it lead to the discovery of admissible evidence." Tanchel v. Shoemaker, 928 So.2d 440, 442 (Fla. 5th DCA 2006) (citing Langston, 655 So.2d at 94); see also Fla. R. Civ. P. 1.280(b)(1) (providing that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action" (emphasis added)). Documents relating to the events or information after the alleged incident have been held to be immaterial when there has been no showing of relevance to the alleged incident. See Tanchel, 928 So.2d at 442; Caterpillar Indus., Inc. v. Keskes, 639 So.2d 1129, 1131 (Fla. 5th DCA 1994).
However, Amendment 7 provides a patient with the right to "any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." Art. X, § 25(a). "`[A]dverse medical incident' means medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have *825 caused injury to or death of a patient." Art. X, § 25(c)(3). Subsection (c)(2) provides that "[t]he term `patient' means an individual who has sought, is seeking, is undergoing, or has undergone care or treatment in a health care facility or by a health care provider." This includes "actual, prospective, or previous" patients. Notami Hosp. of Fla., Inc. v. Bowen, 927 So.2d 139, 143 (Fla. 1st DCA 2006), appeal filed, SC06-912 (Fla. May 5, 2006); see also Buster, 932 So.2d at 350 ("The term `patient' is defined in very broad terms to include any individual who has received or is currently receiving medical care or treatment."). Therefore, the Shahbases, as previous patients, are entitled to any of the hospital's records relating to any adverse medical incident. There is no requirement that the records discoverable under Amendment 7 be relevant to any pending litigation. We therefore deny the hospital's claim for relief that is based on the assertion that documents created or filed after November 2, 2004, are irrelevant.

B. The Claim that Documents Are Protected by the Work-Product Privilege

The hospital further claims that Amendment 7 does not preempt the work-product privilege and that the trial court erred in failing to recognize this and in failing to order protection from discovery or to at least conduct an in camera inspection. It argues that Dr. St. John's credentialing files and documents relating to the investigation of the treatment of Shelby Shahbas or any medical negligence that could have injured Shelby Shahbas fall within the work-product privilege because they relate to the hospital's investigation of the incident. The hospital contends that further proceedings would be necessary to determine if the Shahbases could make the showing required under Florida Rule of Civil Procedure 1.280(b)(3) "that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means."
The Shahbases respond that the hospital had the burden to show that the documents were privileged and that the hospital never met that burden and never filed a privilege log.
We recognize that it has been suggested that Amendment 7 does not affect the work-product and attorney-client privileges. See Buster, 932 So.2d at 352; Advisory Opinion to the Attorney Gen. Re Patients' Right to Know About Adverse Med. Incidents, 880 So.2d at 621. However, we do not need to decide this issue because we do not read the trial court's order as directing discovery of documents that may be privileged by the work-product doctrine. In its order, the trial court did not address the work-product privilege but did address the attorney-client privilege: "The Buster Court clearly indicated that attorney-client privilege has not been affected by the passage of Amendment 7. Should the hospital claim that privilege then a privilege log would be an appropriate response."
When a party asserts the work-product privilege, it should file a privilege log. See Gen. Motors Corp. v. McGee, 837 So.2d 1010, 1032 (Fla. 4th DCA 2002) ("The way that a party claims privilege under [rule 1.280(b)(5) ] is to file a privilege log."). Rule 1.280(b)(5) provides:

Claims of Privilege or Protection of Trial Preparation Materials. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly *826 and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.
"Although waiver of the attorney-client privilege and work-product privileges is not favored in Florida, the rule is mandatory and a waiver can be found by failure to file a privilege log." Gosman v. Luzinski, 937 So.2d 293, 295 (Fla. 4th DCA 2006). However, "[a] party is required to file a log only if the information is `otherwise discoverable.'" Id. at 296 (holding that until a trial court rules on a party's objection to discovery based on it being overly burdensome and harassing, the party asserting a privilege is not required to file a privilege log).
Here, the hospital did not file a privilege log regarding documents that might be protected by the work-product privilege but rather raised other objections to the discovery. The trial court did not specifically address the work-product privilege or the hospital's failure to file a privilege log, but it did rule that the documents were otherwise discoverable. Now that the documents have been ruled discoverable, the hospital may assert the work-product privilege by filing a privilege log. We need not decide whether the work-product privilege is applicable until the claim of privilege has been properly presented to and considered by the trial court.
C. The Claim That the Production of Documents Will Violate Privacy Rights and Will Be Overly Burdensome
The hospital argues that the trial court erred in requiring discovery of documents relating to medical incidents or medical negligence involving Dr. St. John. The hospital claimed that production of these documents would be overly burdensome and would violate the state and federal privacy rights of other patients.
The Shahbases respond that the hospital did not demonstrate that the request for documents was overly burdensome because it did not attempt to quantify the number of documents to be reviewed or the number of employee hours needed to comply with the request.
As discussed above, Amendment 7 clearly provides that the Shahbases are entitled to any records relating to any adverse medical incidents, which would necessarily include those relating to Dr. St. John. Whether the request is overly burdensome is not a relevant consideration under Amendment 7.
In addition, the trial court's order does not require the hospital to produce documents of other patients without redacting the patients' private information. In producing the documents discoverable under Amendment 7, the hospital is required to protect the identity of the patients. Amendment 7 states that "[i]n providing such access [to medical records], the identity of patients involved in the incidents shall not be disclosed, and any privacy restrictions imposed by federal law shall be maintained." Art. X, § 25(b).

D. The Claim Regarding Documents That Are Not Related to "Adverse Medical Incidents"

Last, the hospital claims that several of the Shahbases' requests are overly broad in the context of Amendment 7 and do not relate to adverse medical incidents. The hospital contends that general requests for documents relating to policies and procedures and the credentialing and recredentialing of Dr. St. John are not permitted by Amendment 7 because these documents may likely contain information unrelated to adverse medical incidents. We agree.
*827 Several of the requests submitted by the Shahbases cover documents that are not within the scope of Amendment 7. In request 1, the Shahbases seek documents relating "to the clinic's policies and procedures after November 2, 2004, involving health care quality improvement, risk management, peer review, handling of adverse medical incidents, and credentialing issues." Request 2 seeks "[e]ach and every policy and procedure relating to the rules to be followed after November 2, 2004, in the investigation of adverse medical incidents" and other incidents that could cause injury or death to a patient. Request 5 seeks "[e]ach and every document related to the credentialing and re-credentialing process for Patricia St. John, M.D." This request did not include a date, but the trial court ordered the hospital to produce such documents created after November 2, 2004.
Amendment 7 allows for the production of records relating to any adverse medical incidents, including "incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees." Art. X, § 25(c)(3). Amendment 7 does not require production of documents relating to general policies and procedures of such committees or other documents that do not contain information about particular adverse medical incidents. The documents sought in requests 1 and 2 relating to policies and procedures are by their nature outside the scope of Amendment 7. And request 5 concerning documents relating to the credentialing and recredentialing of Dr. St. John is overly broad because it encompasses documents that do not contain information about particular adverse medical incidents.
At the hearing below, the Shahbases essentially conceded that the documents would be privileged but for the adoption of Amendment 7 because in requesting the nine sets of documents, they specifically did not ask for documents that were created before November 2, 2004. They stated that they based their requests on Amendment 7 and the Buster opinion.
Because the Shahbases are entitled under Amendment 7 only to those documents which contain information about an adverse medical incident, the trial court departed from the essential requirements of law in ordering a blanket disclosure of privileged documents on the basis of Amendment 7. See Hudak, 556 So.2d at 832.

V. Conclusion

We grant the petition and quash the order of the trial court to the extent it ordered production of privileged documents that do not relate to adverse medical incidents. We otherwise deny the petition. We remand for the trial court to enter an order consistent with this opinion.
Petition denied in part; petition granted in part.
DAVIS and LaROSE, JJ., Concur.