*1045
 
 COBB, W., Senior Judge.
 

 The petitioner, Florida Eye Clinic, P.A. (FEC), seeks certiorari review of a discovery order obtained by the plaintiff, Mary T. Gmach, in a medical malpractice action on the basis that said order will cause it irreparable harm that cannot be corrected by post-trial appeal. At issue are incident reports concerning complaints of infections and related investigations at the FEC facility over a four-year period from 2002 to 2006.
 

 This petition implicates the work-product doctrine, attorney-client privilege, and the breadth and burden of the requested discovery. Our decision concerns the interpretation and application of article X, section 25 of the Florida Constitution, which is entitled “Patients’ right to know about adverse medical incidents.” This provision was passed by the voters in November 2004 as amendment 7.
 
 See Fla. Hosp. Waterman, Inc. v. Buster,
 
 984 So.2d 478, 480-81 & n. 1 (Fla.2008). It provides:
 

 (a) In addition to any other similar rights provided herein or by general law, patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident.
 

 (b) In providing such access, the identity of patients involved in the incidents shall not be disclosed, and any privacy restrictions imposed by federal law shall be maintained.
 

 (c) For purposes of this section, the following terms have the following meanings:
 

 (1) The phrases “health care facility” and “health care provider” have the meaning given in general law related to a patient’s rights and responsibilities.
 

 (2) The term “patient” means an individual who has sought, is seeking, is undergoing, or has undergone care or treatment in a health care facility or by a health care provider.
 

 (3) The phrase “adverse medical incident” means medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient, including, but not limited to, those incidents that are required by state or federal law to be reported to any governmental agency or body, and incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees.
 

 (4) The phrase “have access to any records” means, in addition to any other procedure for producing such records provided by general law, making the records available for inspection and copying upon formal or informal request by the patient or a representative of the patient, provided that current records which have been made publicly available by publication or on the Internet may be “provided” by reference to the location at which the records are publicly available.
 

 Fla. Const, art. X, § 25.
 

 During the course of discovery Gmach served a request for production of documents seeking,
 
 inter alia,
 
 incident reports concerning complaints of infections and related investigations at the FEC facility over the four-year period. On July 1, 2008, FEC responded by objecting to the discovery on the bases of work-product and attorney-client privilege; it also contended that the information sought was overly broad, not limited to a reasonable
 
 *1046
 
 time, and would be unduly burdensome to obtain.
 

 Gmach filed a motion to compel or for
 
 in camera
 
 inspection, which resulted in an order dated September 2, 2008, limiting the scope of production to a two-year period, and ordering that FEC either produce the requested documentation or file a privilege log. Having learned that FEC intended to file a privilege log instead of producing the documents, Gmach once again filed a motion to compel or, alternatively, for in camera inspection. Gmach argued that any privilege had been waived and that she was entitled to incident reports pursuant to the Florida Constitution as well as supporting case law. On September 19, 2008, FEC filed a privilege log asserting only a work-product privilege.
 

 On November 19, 2008, a hearing was held on Gmach’s motion to compel the production of documents. FEC supported its position with the affidavit of its risk manager, Rebecca Traynor, in which she asserted:
 

 8. This document is created in anticipation of litigation, in order to make sure that all of the information concerning an investigation of wound infection is memorialized at or near the time of the event occurring, so that accurate information will be available to defense counsel in the event that a lawsuit is filed arising out of the wound infection chronicled.
 

 [[Image here]]
 

 13. It is designed to provide information concerning an ongoing investigation at or near the time the investigation occurs, so that we can utilize this document with counsel in defense of any lawsuit that is filed arising out of an event that occurs at the Ambulatory Surgical Center.
 

 The trial court concluded that in light of section 25 “the privilege is no longer there” and issued the following order:
 

 ORDER COMPELLING PRODUCTION OF DOCUMENTS
 

 THIS CAUSE came before the Court on the Plaintiffs Motion to Compel or Motion for in Camera Inspection filed on August 28, 2008 and the Defendant’s Privilege Log filed in response on September 22, 2008. The Court, having considered the motion and privilege log and being fully advised in their premises, finds
 

 1. The Defendant was ordered on September 2, 2008 to produce documents including incident reports concerning incidents of infection of any type that were investigated or complained of from a one year period [sic] starting on September 28, 2003 and ending on September 28, 2005.
 

 2. The documents, including the investigations into possible infections and the quality improvement reports associated with those incidents, are of a character which meets the classification of “self-policing processes” identified as subject to discovery under Art. X, § 25 of the Florida Constitution in
 
 Florida Hospital Waterman, Inc. v. Buster,
 
 984 So.2d 478 (Fla.2008).
 

 3. The work product privilege with respect to those items disclosed in the Defendant’s Privilege Log is superseded by Art. X, § 25 of the Florida Constitution and the Court’s ruling in
 
 Buster.
 

 4. The documents in question are subject to the discovery process and should be turned over to the Plaintiff.
 

 FEC then filed the instant certiorari petition.
 

 In
 
 Florida Hospital Waterman, Inc. v. Buster,
 
 984 So.2d 478 (Fla.2008), the Flori
 
 *1047
 
 da Supreme Court undertook,
 
 inter alia,
 
 review of the certified questions articulated by this court in
 
 Florida Hospital Waterman, Inc. v. Buster,
 
 932 So.2d 344 (Fla. 5th DCA 2006). The supreme court also addressed the First District Court’s opinion in
 
 Notami Hospital of Florida, Inc. v. Bowen,
 
 927 So.2d 139 (Fla. 1st DCA 2006). In
 
 Bowen,
 
 the First District Court agreed with this court that amendment 7 was self-executing; however, it also concluded that amendment 7 was retroactive, which placed it in direct conflict with this court. The court in
 
 Boiven
 
 further concluded that the legislation implementing amendment 7, section 381.028, Florida Statutes, was unconstitutional in its entirety-
 

 The supreme court ultimately agreed with this court that amendment 7 was self-executing; however, it concluded that this court had incorrectly ruled that amendment 7 had prospective application only.
 
 See Buster,
 
 984 So.2d at 494. (“We also hold that the right of access granted pursuant to the amendment is retroactive and therefore applies to adverse medical incident records existing prior to its effective date of November 2, 2004.”). Notably, the supreme court also disagreed with the First District Court’s conclusion in
 
 Boiven
 
 that the implementing legislation, section 381.028, was unconstitutional in its entirety.
 
 Id.
 
 Instead, the supreme court concluded that the unconstitutional sections could be severed from the legislation, while the remaining valid portions could be left standing.
 
 Id.
 

 The supreme court’s opinion in
 
 Buster
 
 provided no
 
 express
 
 commentary regarding the impact of amendment 7 on traditional, common law privileges such as the work-product and attorney-client privileges. However, with respect to this issue, it is noted that prior to the November 2004 election, the supreme court was asked to provide an advisory opinion regarding the legality of the proposed amendment 7.
 
 See Advisory Opinion to the Attorney General Re: Patients’ Right to know About
 
 Adverse
 
 Medical Incidents,
 
 880 So.2d 617, 618 (Fla.2004). In that opinion, the supreme court addressed the potential impact of amendment 7 on the work-product doctrine as follows:
 

 Contrary to the clear effect upon [sections 395.0193(8) and 766.101(5), Florida Statutes], the amendment does not expressly affect either rule 1.280(c) [containing the work-product privilege] or the attorney-client privilege, and there is no evidence of any intent to do so. Any effect on the rule or the privilege is purely speculative; and, even if true, any such effect would not rise to the level of “substantially” altering or performing a function of the judiciary.
 

 Id.
 
 at 621 (footnote omitted). The supreme court also stated the following in the same opinion:
 

 Opponent asserts that the title and summai’y do not inform the voters that the amendment restricts the power of the judiciary to establish procedural rules and to regulate attorneys. The basis for this argument is the effect that the amendment would have on work product and the attorney-client privilege. We reject this argument.
 
 The amendment will affect this Court’s procedural rules only to the extent that certain records currently classified as work product may have to be disclosed to certain persons.
 
 As we stated earlier, any effect on the attorney-client privilege is speculative.
 

 Id.
 
 at 622 (emphasis added).
 

 Since the supreme court’s opinion in
 
 Buster,
 
 several circuit courts have weighed in on this issue, with the bulk of them concluding that the privilege still exists.
 
 See
 
 Robert C. Weill,
 
 Buster and the
 
 Con-
 
 *1048
 

 tinning Saga Over the Patients’ Right-To-Know-Abontr-Medical-Incidents-Am.endment,
 
 28 Trial Advocate Quarterly 14 (2009) (citing circuit court orders from four different counties that held the work-product privilege remains intact, but noting at least one circuit court has reached the opposite conclusion).
 

 In the instant petition, FEC asserts that the trial court’s order must be quashed because it departs from the essential requirements of the law, causing material injury which cannot be remedied on appeal. In particular, FEC contends that the passage of amendment 7 did not eliminate the applicability of the work-product privilege with respect to discovery requests. FEC argues that
 
 Buster
 
 and related cases recognize that amendment 7 served only to eradicate
 
 statutory
 
 privileges associated with the “self-policing processes” of health care providers, while having no impact on the work-product privilege, which is an outgrowth of the common law. FEC further notes that a number of circuit courts have concluded that the work-product privilege remains intact despite amendment 7.
 

 In her response, Gmach argues that amendment 7 preempts the work-product privilege where a litigant seeks the production of an adverse medical incident report. Gmach contends that this conclusion is supported by the plain language of the amendment, and she further argues that “[t]he reasoning put forth in both
 
 [Buster
 
 ] opinions can be applied to and fully supports Gmach’s contention that the constitutional amendment preempts Defendants work-product privilege objection to producing the requested documentation in the instant matter.”
 

 We note that the incident reports sought by Gmach in the instant case may have been protected by the work-product privilege prior to the passage of amendment 7.
 
 See Healthtrust, Inc. v. Saunders,
 
 651 So.2d 188, 189 (Fla. 4th DCA 1995) (“Hospital incident reports are part of the work-papers of the attorney defending a licensed facility in litigation and are subject to discovery upon a showing of need and inability without undue hardship to obtain the substantial equivalent by other means.”);
 
 see also 1620 Health Partners, L.C. v. Fluitt,
 
 830 So.2d 935, 938 (Fla. 4th DCA 2002). The trial court, nevertheless, concluded that amendment 7 superseded the work-product privilege because the documents disclosed in FEC’s privilege log “are of a character which meets the classification of ‘self-policing processes’ identified as subject to discovery under Art. X, § 25 of the Florida Constitution in
 
 Florida Hospital Waterman, Inc. v. Buster,
 
 984 So.2d 478 (Fla.2008).” We agree, insofar as we conclude that the plain language of amendment 7 evinces an intent to abrogate any
 
 fact
 
 work-product privilege that may have existed prior to the passage of amendment 7.
 
 See Benjamin v. Tandem Healthcare, Inc.,
 
 998 So.2d at 566, 570 (Fla.2008) (“In interpreting a constitutional amendment, we begin with the amendment’s plain language.”).
 

 Amendment 7 expresses a clear intent that “patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident.” Fla. Const, art. X, § 25(a). Moreover, article
 
 X,
 
 section 25(c)(3), defines the term “adverse medical incident” to include any “incidents that are reported to or reviewed by any ... risk management ... committee, or any representative of any such committees.” Here, the incident reports requested by Gmach were prepared by the risk manager for FEC “in order to make sure that all of the information concerning an investigation of wound infection is memorialized at or near the
 
 *1049
 
 time of the event occurring, so that accurate information will be available to defense counsel in the event that a lawsuit is filed arising out of the wound infection chronicled.” Given the language of section 25, it seems clear that the incident reports in this case are the type of reports contemplated by amendment 7. These reports were never reviewed by defense counsel prior to the instant litigation.
 

 The facts presented in this case do not implicate the distinction that exists between
 
 fact
 
 work product and
 
 opinion
 
 work product. This distinction was explained by the Third District Court in
 
 State v. Rabin,
 
 495 So.2d 257 (Fla. 3d DCA 1986):
 

 Work product can be divided into two categories: “fact” work product (i.e., factual information which pertains to the client’s case and is prepared or gathered in connection therewith), and “opinion” work product (i.e., the attorney’s mental impressions, conclusions, opinions, or theories concerning his client’s ease).
 
 In re Sealed Case,
 
 676 F.2d 793, 810-11 (D.C.Cir.1982). A clear distinction has been drawn between these two types of work product with respect to the degree of protection provided.
 
 Western Fuels Association v. Burlington Northern Railroad,
 
 102 F.R.D. 201, 204 (D.Wyo.1984). Generally, fact work product is subject to discovery upon a showing of “need,” whereas opinion work product is absolutely, or nearly absolutely, privileged. The difference between the degrees of protection given oral and written statements is based partially upon this distinction between fact and opinion work product. Compelling disclosure of the attorney’s notes or memoranda of oral statements tends to reveal an attorney’s opinion work product.
 
 Upjohn Co. [v. United Sates,
 
 449 U.S. 383, 399-401, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ];
 
 In re Grand Jury Investigation,
 
 599 F.2d [1224, 1231 (3d Cir.1979) ].
 

 [[Image here]]
 

 The protection of an attorney’s mental process is essential to the proper functioning of the adversary system. The possibility that an attorney’s work -product might be revealed, even in later unrelated causes, may deter the attorney from freely recording his mental impressions, conclusions, theories, or opinions. DuPlan Corp. [v. Moulinage et Retorderie de Chavanoz,
 
 509 F.2d 730, 734-36 (4th Cir.1974),
 
 cert. denied,
 
 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975) ]. Moreover, this privacy interest is equally implicated where, as here, disclosure is sought pursuant to an investigative subpoena as it is where disclosure is being sought pursuant to a discovery request.
 
 Cf., e.g., In re Grand Jury Proceedings,
 
 473 F.2d 840, 847 (8th Cir.1973) (“The interest in protecting work product which prevails in [a] ... criminal proceeding should, for the same policy reasons, prevail in [a grand jury proceeding].”).
 

 Id.
 
 at 262-63 (footnotes omitted) (emphasis added).
 

 In the present case, it is clear that the adverse incident reports in question were never reviewed by counsel. According to the affidavit of the risk manager they were “created in anticipation of litigation, in order to make sure that all of the information concerning an investigation of wound infection is memorialized at or near the time of the event occurring, so that accurate information
 
 will be available to defense counsel in the event that a lawsuit is filed
 
 arising out of the wound infection chronicled.” (emphasis added). Thus, it is clear that the reports did not contain any attorney’s mental impressions, conclusions, opinions, or theories concerning his client’s case (i.e., any opinion work product). In fact, it appears relatively clear that at the
 
 *1050
 
 time of the creation of the reports, defense counsel had not even been consulted and would not likely be consulted until a lawsuit was filed.
 

 In any event, it seems that to the extent the reports truly were “created in anticipation of litigation,” they would still not amount to anything more than
 
 fact
 
 work product due to their failure to contain any mental impressions, conclusions, opinions, or theories of FEC’s defense counsel. As noted above, the reports at issue are the types of reports that amendment 7 was designed to encompass. It would thwart the intent of the voters to allow FEC to circumvent amendment 7 by now asserting a
 
 fact
 
 work-product privilege in response to Gmach’s discovery request. Accordingly, the trial court correctly concluded that, in the context of this case, a fact work-product privilege is unavailable because of amendment 7. Another result might have been mandated had the reports at issue included the mental impressions, conclusions, opinions, or theories of an attorney’s case. We do not read amendment 7 as evincing an intent from the voters to eliminate the privilege of
 
 opinion
 
 work product. There is no indication from either section 25, the ballot summary, or the statement and purpose to the amendment that the voters intended for amendment 7 to provide patients not only a right to access records of any adverse incident report prepared in the course of a medical facility’s business, but also of any such reports that include an attorney’s mental impressions, conclusions, theories, or opinions. It is hard to imagine that the voters contemplated the potential chilling effect that may result in the legal community if an attorney’s mental impressions contained in such a report could be made readily available to a requesting patient under the amendment.
 

 In approving amendment 7, the citizens of Florida have demonstrated their conclusion that a patient’s right to obtain records made in the course of business by a health care provider is a more important consideration than the chilling effect created by the potential public disclosure of those records.
 
 See Amisub N. Ridge Hosp., Inc. v. Sonaglia,
 
 995 So.2d 999 (Fla. 4th DCA 2008). On the other hand, nothing in the passage of amendment 7 indicates an intent amongst the voters to create the same chilling effect within the legal profession by mandating the disclosure of any adverse medical incident reports containing the mental impressions, conclusions, theories, or opinions of an attorney (i.e., opinion work product).
 
 See Rabin,
 
 495 So.2d at 263. Therefore, the instant petition is denied because the adverse medical incident reports sought by Gmach are the types of report that appear to be specifically contemplated by the voters’ passage of amendment 7. We note that any attempt by FEC to challenge the discovery by now claiming that the reports constitute fact work product would be an improper attempt to circumvent the clear will of the people.
 

 PETITION DENIED.
 

 TORPY and COHEN, JJ., concur-.