NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BARTOW HMA, LLC d/b/a BARTOW
REGIONAL MEDICAL CENTER,

        Petitioner,

v.

AMBER EDWARDS and LARRY
THOMAS, M.D.,

        Respondents.

Case No. 2D14-3450

Opinion filed July 10, 2015.

Petition for Writ of Certiorari to the Circuit
Court for Polk County; Ellen S. Masters,
Judge.

Michael A. Petruccelli and Paul C. Buckley
of Fann & Petruccelli, P.A., Fort
Lauderdale, and Amy L. Dilday and Andrew
R. McCumber of McCumber, Daniels,
Buntz, Hartig & Puig, P.A., Tampa, for
Petitioner.

Kara Berard Rockenbach and Kristi
Bergemann Rothell of Methe &
Rockenbach, P.A., West Palm Beach, and
Karen E. Terry and Matthew K. Schwenke
of Searcy Denney Scarola Barnhart &
Shipley, P.A., West Palm Beach, for
Respondent Amber Edwards.

No appearance for Respondent Larry
Thomas, M.D.

SILBERMAN, Judge.

Bartow HMA, LLC, ("the Hospital"), seeks certiorari review of a discovery order entered in a medical negligence lawsuit filed against the Hospital and Larry Thomas, M.D., by Amber Edwards.  Findings 15, 16, and 20 of section E of the order require the Hospital to produce reports relating to "attorney requested external peer review" pursuant to article X, section 25, Florida Constitution ("Amendment 7").  We conclude that the order departs from the essential requirements of the law because these reports do not fall within the ambit of Amendment 7 and are privileged.  We therefore grant the petition.

## I. Facts

In her complaint, Edwards alleged that she was injured when Dr. Thomas severed her common bile duct during gallbladder removal surgery.  Edwards alleged that the Hospital was liable for the injuries caused by Dr. Thomas and unnamed nurses and hospital personnel pursuant to theories of agency, apparent agency, and vicarious liability.  Edwards also alleged that the Hospital was directly liable to her based on, among other things, theories of negligent hiring and non-delegable duty.

Edwards served the Hospital with a request to produce that included a request for all documents created within the five years before Edwards' surgery relating to the Hospital's investigation or review of Dr. Thomas's care and treatment of any patient.  Edwards also requested all documents pertaining to the Hospital's investigation or review of her care and treatment.  Edwards cited to Amendment 7 as authorization for this requested discovery.

The Hospital filed a response in which it asserted that "Amendment 7 only provides patients a right to access to records made or received in the course of business by a health care facility or a health care provider relating to adverse medical incidents." The Hospital claimed that some of the requested records did not fall within these parameters and that many of the documents were protected from discovery by applicable privileges. Edwards filed a motion to compel better responses. The court entered an order overruling certain objections and sustaining others.

The Hospital filed further responses which essentially reiterated the same objections and attached privilege logs. In Privilege Log B at 15, 16, and 20, the Hospital challenged specific reports "relating to attorney requested external peer review" and asserted that they were privileged. Edwards responded by filing a motion for rule to show cause or for an in camera inspection.

The court conducted a hearing on the motion at which it clarified its prior ruling on the Hospital's objections. The court explained that it had already determined that the documents in the Hospital's privilege log were privileged. But it had also concluded that Amendment 7 preempted the privileges so that any documents relating to adverse medical incidents were discoverable. The court agreed to conduct an in camera inspection to determine if any of the documents in the privilege logs did not fall within the ambit of Amendment 7.

After the in camera inspection, the court entered the order that is the subject of the Hospital's certiorari petition. In the order, the court required the production of all documents related to the Hospital's peer review of adverse medical incidents involving Dr. Thomas including the external peer review reports listed in

Privilege Log B at 15, 16, and 20.  The Hospital provided Edwards the documents relating to the internal peer review process but filed this petition for certiorari challenging the portion of the order requiring production of the external peer review reports.

## II.  Analysis

In order to be entitled to certiorari review, the Hospital must establish that the circuit court's order (1) causes it material injury for which there is no adequate remedy on direct appeal and (2) departs from the essential requirements of the law.  See Bartow HMA, LLC v. Kirkland, 126 So. 3d 1247, 1251-52 (Fla. 2d DCA 2013).  The first component is established when a petitioner is ordered to produce documents that are statutorily privileged.  See id. at 1252; Lakeland Reg'l Med. Ctr. v. Neely ex rel. Neely, 8 So. 3d 1268, 1269 (Fla. 2d DCA 2009).  The issue for our review is whether the circuit court's order departed from the essential requirements of the law.

The dispositive question here is whether the external peer review reports fall within the ambit of Amendment 7.  See Kirkland, 126 So. 3d at 1254.  If the external peer review reports do not fall within the ambit of Amendment 7, they are protected from discovery because the circuit court has already determined that they are privileged.  If the external peer review reports do fall within the ambit of Amendment 7, it will be necessary to determine whether the applicable privileges are preempted by Amendment 7.  See id.  As discussed below, we conclude that the requested reports are not within the ambit of Amendment 7.

### A.  History of Amendment 7

Florida law contains statutory privileges that provide for the confidentiality of health care facility or provider peer review as conducted by a medical review

committee or governing board of licensed hospital facilities. See §§ 395.0191(8), 395.0193(8), 766.101(5), Fla. Stat. (2010); W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 9-10 (Fla. 2012). Those provisions protect "any 'document considered by the committee or board as part of its decision-making process.' " W. Fla. Reg'l, 79 So. 3d at 10 (quoting Cruger v. Love, 599 So. 2d 111, 114 (Fla. 1992)).

Amendment 7 was approved by Florida voters after a general election in November 2004. Kirkland, 126 So. 3d at 1252. It preempts the statutory discovery protections for the peer review process, id. at 1253, by providing patients a right of "access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." Art. X, § 25(a). The issue of whether it preempts certain common law privileges is not settled. See Kirkland, 126 So. 3d at 1253.

### B. Application of Amendment 7

### 1. Made or Received in the Course of Business

Among other things, the Hospital argues that the external peer review reports do not fall within the ambit of Amendment 7 because they were not "made or received in the course of business." The documents at issue are each entitled "Peer Review Report." They were generated in response to letters sent by the Hospital's counsel to the director of client services at a business called "M.D. Review." On behalf of the Hospital, counsel requested

> that M.D. Review conduct an external peer review
> concerning the medical care and treatment rendered by one
> of its physicians [name and specialty], to [number] different
> patients at the facility. We are requesting this external peer
> review investigation to be done on an attorney client, work
> product and peer review privileged basis.

Counsel included medical records from certain specified patients. The Hospital has consistently maintained that counsel requested the reports at issue for purposes of litigation.

Each external peer review report was prepared by a physician, and each report references a separate patient. Each report provides a "Case Overview" in which the reviewing physician describes the patient's complaints and details the course of diagnosis and treatment. The next section is "Findings of Fact" which is a chart noting details regarding each test or treatment administered. Then there is a section entitled "Discussion" in which the reviewing physician conducts an in-depth critique of the subject physician's course of diagnosis and treatment. Each report finishes with a "Conclusion" indicating whether the reviewing physician believes the standard of care was met.

To determine whether these external peer review reports fall within the ambit of Amendment 7, we are guided by some general principles of statutory construction. The polestar of our analysis is legislative intent. W. Fla. Reg'l, 79 So. 3d at 8. And to discern intent, we must look to "the plain and obvious meaning of the statute's text." Id. at 9. If that language is sufficiently clear and unambiguous to convey an unequivocal meaning, then we will apply that meaning without considering any further rules of statutory construction. Id.

"Course of business" is not defined in Amendment 7, but it has a plain and obvious meaning. Indeed, similar language has been discussed in cases involving section 90.803(6)(a), Florida Statutes (2003), which sets forth a hearsay exception for records "kept in the ordinary course of a regularly conducted business activity." Some

records are kept in the course of a regularly conducted business activity if they are kept pursuant to a statutorily mandated duty.  See Yisrael v. State, 993 So. 2d 952, 958 (Fla. 2008).  While Florida hospitals are statutorily required to establish internal risk management programs to investigate and respond to adverse incidents,[1] they are not statutorily required to retain external experts to evaluate adverse medical incidents to determine whether the standard of care was met.  Here, the external peer review reports were made for purposes of litigation rather than to fulfill a statutory duty.

Other records may be kept in the course of business even in the absence of a statutory duty.  See, e.g., Bank of N.Y. v. Calloway, 157 So. 3d 1064, 1071 (Fla. 4th DCA 2015) ("Businesses rely upon their records 'in the conduct of [their] daily affairs' and 'customarily check [them] for correctness during the course of the business activities.' " (quoting Charles W. Ehrhardt, Florida Evidence § 803.6 (2014 ed.))).  Records created by an expert retained for purposes of litigation are not kept in the course of regularly conducted business activity.  See Brown v. Int'l Paper Co., 710 So. 2d 666, 668 (Fla. 2d DCA 1998) (holding that a handwriting analyst's report created during the investigation of an allegedly forged purchase requisition form was not made in the course of business).  Accordingly, the external peer review reports were not "made or received in the course of business" under Amendment 7.

### 2.  Adverse Medical Incident

Unlike the phrase, "made or received in the course of business," the term "adverse medical incident" is defined in Amendment 7.

---

[1]See §§ 395.0193, .0197, Fla. Stat. (2010).

> The phrase "adverse medical incident" means medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient, including, but not limited to, those incidents that are required by state or federal law to be reported to any governmental agency or body, <u>and incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee</u>, or any representative of any such committee.

Art. X, § 25(c)(3) (emphasis added).

Edwards argues that the external peer review reports relate to adverse medical incidents under this definition because they pertain to "incidents that are reported to or reviewed by any health care facility peer review . . . or similar committee." Edwards acknowledges that M.D. Review is not a "committee" but asserts that it functions as the equivalent and notes that the reports are each entitled "Peer Review Report." Edwards claims that the retention of M.D. Review by counsel is an attempt by the Hospital to outsource the peer review process and cloak it with protection from discovery under Amendment 7.

We cannot agree that M.D. Review functions as the equivalent of a health care facility peer review. M.D. Review does not perform the routine function of reviewing incidents for the Hospital when medical negligence or other events occur as specified in Amendment 7. Instead, it provides an expert opinion on the standard of care on sporadic occasions when litigation is imminent. See Neely, 8 So. 3d at 1270 n.2 (discussing Amendment 7 and noting the distinction between incident reports prepared in accordance with Florida Statutes and those "documents prepared or produced at the specific request of the client's attorney for use in litigation"). While the

documents at issue are each entitled "Peer Review Report," it is the substance of the reports and their context that determines whether they are within the ambit of Amendment 7. Although the reports address adverse medical incidents, the reports contain expert opinions requested by counsel. The limited record before us does not suggest that the reports were obtained as part of the Hospital's regular peer review process.

We are also not persuaded that the use of external peer review under these circumstances is an attempt to circumvent the disclosure requirements of Amendment 7. The Hospital has already satisfied those requirements by providing access to numerous documents pertaining to internal adverse incident reporting and peer review. Of course, our result may have been different if the Hospital had not conducted an internal peer review of the incidents in question.

### 3. Conclusion on the Application of Amendment 7

Thus, we conclude that the external peer review reports do not fall within the ambit of Amendment 7 because they were not "made or received in the course of business." Because the circuit court has already determined that the reports are privileged, they are protected from discovery.

## III. Preemption of Common Law Privileges

In light of our conclusion that the reports do not fall within the ambit of Amendment 7, it is not necessary to fully analyze Edwards' alternate argument that Amendment 7 preempts the common law attorney-client and work-product privileges. That said, the law on the issue as it pertains to the common-law work-product and attorney-client privileges is still developing. Florida courts have determined that the

privilege for fact work-product does not survive Amendment 7.  See Kirkland, 126 So.

3d at 1253; Neely, 8 So. 3d 1270; Acevedo v. Doctors Hosp., Inc., 68 So. 3d 949,

953 (Fla. 3d DCA 2011); Fla. Eye Clinic, P.A. v. Gmach, 14 So. 3d 1044, 1048 (Fla. 5th

DCA 2009).  But courts have distinguished the privilege for opinion work-product and

ruled that it is not preempted by Amendment 7.  See Kirkland, 126 So. 3d at 1253;

Acevedo, 68 So. 3d at 953; Gmach, 14 So. 3d at 1050.  And while no appellate court

has ruled on the issue of whether Amendment 7 preempts the attorney-client privilege,

this court has noted that there has been a suggestion to that effect.  See Kirkland, 126

So. 3d at 1253; Morton Plant Hosp. Ass'n, Inc. v. Shahbas ex rel. Shahbas, 960 So. 2d

820, 825 (Fla. 2d DCA 2007).

## IV.  Conclusion

Because the external peer review reports do not fall within the ambit of

Amendment 7 and the circuit court has ruled that they are privileged, it was a departure

from the essential requirements of the law to order their production.  Accordingly, we

grant the Hospital's petition for writ of certiorari and quash findings 15, 16, and 20 of

section E of the circuit court's order.

Petition granted; order quashed in part.

KELLY and BLACK, JJ., Concur.

- 10 -