PER CURIAM.
The Attorney General has requested that this Court review a proposed amendment to the Florida Constitution that would permit patients and prospective patients of health care providers to obtain information concerning adverse medical incidents. We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const. For the reasons explained below, we approve the amendment and the ballot title and summary for placement on the ballot.
I. THE PROPOSED AMENDMENT AND BALLOT SUMMARY
The proposed amendment provides as follows:
1) Statement and Purpose:
The Legislature has enacted provisions relating to a patients’ bill of rights and responsibilities, including provisions relating to information about practitioners’ qualifications, treatment and financial aspects of patient care. The Legislature has, however, restricted public access to information concerning a particular health care provider’s or facility’s investigations, incidents or history of acts, neglects, or defaults that have injured patients or had the potential to injure patients. This information may be important to a patient. The purpose of this amendment is to create a constitutional right for a patient or potential patient to know and have access to records of a health care facility’s or provider’s adverse medical incidents, including medical malpractice and other acts which have caused or have the potential to cause injury or death. This right to know is to be balanced against an individual patient’s rights to privacy and dignity, so that the information available relates to the practitioner or facility as opposed to individuals who may have been or are patients.
2) Amendment of Florida Constitution:
Art. X, Fla. Const., is amended by inserting the following new section at the end thereof, to read:
Section 22. Patients’ Right to Know About Adverse Medical Incidents.
(a) In addition to any other similar rights provided herein or by general law, patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident.
(b) In providing such access, the identity of patients involved in the incidents shall not be disclosed, and any privacy restrictions imposed by federal law shall be maintained.
(c) For purposes of this section, the following terms have the following meanings:
(1) The phrases “health care facility” and “health care provider” have the meaning given in general law related to a patient’s rights and responsibilities.
(2) The term “patient” means an individual who has sought, is seeking, is undergoing, or has undergone care or treatment in a health care facility or by a health care provider.
(3) The phrase “adverse medical incident” means medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient, including, but not limited to, those incidents that are required by *619 state or federal law to be reported to any governmental agency or body, and incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees.
(4) The phrase “have access to any records” means, in addition to any other procedure for producing such records provided by general law, making the records available for inspection and copying upon formal or informal request by the patient or a representative of the patient, provided that current records which have been made publicly available by publication or on the Internet may be “provided” by reference to the location at which the records are publicly available.
3) Effective Date and Severability:
This amendment shall be effective on the date it is approved by the electorate. If any portion of this measure is held invalid for any reason, the remaining portion of this measure, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and application.
The ballot title for the proposed amendment is “Patients’ Right to Know About Adverse Medical Incidents.” The summary for the proposed amendment states:
Current Florida law restricts information available to patients related to investigations of adverse medical incidents, such as medical malpractice. This amendment would give patients the right to review, upon request, records of health care facilities’ or providers’ adverse medical incidents, including those which could cause injury or death. Provides that patients’ identitie [sic] should not be disclosed.
II. STANDARD AND SCOPE
OF REVIEW
In Advisory Opinion to the Att’y General re Amendment to Bar Government from Treating People Differently Based on Race in Public Education, 778 So.2d 888 (Fla.2000), this Court summarized its standard of review in initiative petition cases as follows:
The Court’s inquiry, when determining the validity of initiative petitions, is limited to two legal issues: whether the petition satisfies the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot titles and summaries are printed in clear and unambiguous language pursuant to section 101.161, Florida Statutes (1999). See Advisory Opinion to the Attorney General re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 565 (Fla.1998); Advisory Opinion to the Attorney General re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 974 (Fla.1997). In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective on either ground. See Askew v. Firestone, 421 So.2d 151, 154 (Fla.1982). In determining the propriety of the initiative petitions, the Court does not review the merits of the proposed amendments.
Id. at 890-91.
III. THE SINGLE-SUBJECT REQUIREMENT
A. APPLICABLE LAW
Article XI, section 3 of the Florida Constitution requires that an amendment proposed by initiative “shall embrace but one subject and matter directly connected therewith.” Importantly, the single-subject limitation protects the State’s funda *620 mental document from “precipitous” and “spasmodic” changes. See Fine v. Firestone, 448 So.2d 984, 993 (Fla.1984). First, the single-subject requirement “allow[s] the citizens to vote on singular changes in our government that are identified in the proposal and to avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support.” Id. The limitation thereby prevents logrolling. “The second reason for the single-subject restriction is to prevent a single constitutional amendment from substantially altering or performing the functions of multiple aspects of government.” Advisory Op. to Att’y Gen. re Florida Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000).
In determining compliance with the first purpose of the single-subject requirement, this Court examines the amendment to determine whether it “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test-” Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984) (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
As to the second purpose for the single-subject restriction, this Court has stated that a proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test. See In re Advisory Op. to Att’y Gen.—Save Our Everglades, 636 So.2d 1336, 1340 (Fla.1994); see also Advisory Op. to Att’y Gen.—Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla.1991); Evans v. Firestone, 457 So.2d 1351, 1354 (Fla.1984).
B. APPLICATION OF LAW
The opponent[1] to the amendment argues that the amendment violates the single-subject requirement in two ways: (1) it constitutes logrolling and (2) it would affect more than one branch of government.

1. Logrolling

Opponent argues that while the amendment is designed to provide access to records on “adverse medical incidents,” it does so by repealing several different statutes with different purposes, and by restricting a number of different rights available to physicians which are also available to all other Floridians. As stated above, in order to determine whether an amendment constitutes logrolling this Court must examine the amendment to determine whether it “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme.” Fine, 448 So.2d at 990 (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944). Although the amendment may affect several different statutes, the amendment has but one purpose — providing access to records on adverse medical incidents — and all provisions of the amendment appear to be logically related to that purpose.

2. Effect on more than one branch of government

Opponent argues that the amendment affects both the legislative and the judicial branches because it would affect statutes and procedural rules. Unquestionably, the *621 amendment would affect sections 395.0193(8) and 766.101(5) of the Florida Statutes (2003), which currently exempt the records of investigations, proceedings, and records of the peer review panel from discovery in a civil or administrative action. Indeed, this is a primary purpose of the amendment. Opponent also argues that the amendment would affect Florida Rule of Civil Procedure 1.280(c), which restricts the discovery of work product, including incident reports generated by health care providers and facilities. Further, opponent argues that the amendment infringes on the statutes and rules delineating the attorney-client privilege, as there is no exception in the amendment for pertinent documents created by attorneys.
Contrary to the clear effect upon the above two statutes, the amendment does not expressly affect either rule 1.280(c) or the attorney-client privilege, and there is no evidence of any intent to do so. Any effect on the rule or the privilege is purely speculative; and, even if true, any such effect would not rise to the level of “substantially” altering or performing a function of the judiciary.[2]
IV. REVIEW OF BALLOT TITLE AND SUMMARY
I. APPLICABLE LAW
Section 101.106(1), Florida Statutes (2003), requires that the ballot caption for a proposed amendment not exceed fifteen words, that the ballot summary not exceed seventy-five words, and that the two clearly and unambiguously provide an explanation of the “chief purpose” of the measure. See Askew v. Firestone, 421 So.2d 151, 154-55 (Fla.1982). “This requirement provides the voters with fair notice of the contents of the proposed initiative so that the voter will not be misled as to its purpose and can cast an intelligent and informed ballot.” Advisory Op. to Att’y Gen. re People’s Property Rights Amendments Providing Compensation for Restricting Real Property Use May Cover Multiple Subjects, 699 So.2d 1304, 1307 (Fla.1997); see Askew, 421 So.2d at 155 (“Simply put, the ballot must give the voter fair notice of the decision he must make.”). The title and summary must be accurate and informative. See Advisory Op. to Att’y Gen. re Term Limits Pledge, 718 So.2d 798, 803 (Fla.1998). The ballot title and summary, however, are not required “to explain every detail or ramification of the proposed amendment.” Advisory Op. to Att’y Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997).
II. APPLICATION OF LAW
Opponent argues that the ballot title and summary are defective for five reasons: (1) the summary fails to fully inform the voters of the practical impact of the amendment on the existing peer review scheme and thereby prevents the voters from making a knowledgeable decision about what they might be giving up in exchange for what is being offered in the amendment; (2) the summary fails to inform the public of the significant impact the amendment will have on the constitu *622 tional powers granted to the judiciary; (3) the title and summary contain improper political rhetoric; (4) the title and summary are misleading because they purport to be giving the public more than they actually do give, and they imply that there are no current methods for obtaining any information on adverse medical incidents; and (5) important language in the summary is inconsistent with the language in the amendment itself.

1. The practical impact of the amendment

Opponent argues that the summary fails to inform voters that the amendment will have an effect on the peer review statutes. It argues that the Legislature may do away with the peer review system if the amendment passes, and that voters should be advised of the possible impact on this system.
While it is possible that the peer review system will be affected by the amendment, the ballot title and summary are not required “to explain every detail or ramification of the proposed amendment.” Id. It cannot be said that the lack of a prediction as to the amendment’s effect on the peer review statutes misleads the public as to the chief purpose of the amendment.

2. Significant impact on the judiciary

Opponent asserts that the title and summary do not inform the voters that the amendment restricts the power of the judiciary to establish procedural rules and to regulate attorneys. The basis for this argument is the effect that the amendment would have on work product and the attorney-client privilege. We reject this argument. The amendment will affect this Court’s procedural rules only to the extent that certain records currently classified as work product may have to be disclosed to certain persons. As we stated earlier, any effect on the attorney-client privilege is speculative.

3.Improper political rhetoric in the title and summary

Opponent argues that the summary contains improper political rhetoric. The summary states:
Current Florida law restricts information available to patients related to investigations of adverse medical incidents, such as medical malpractice. This amendment would give patients the right to review, upon request, records of health care facilities’ or providers’ adverse medical incidents, including those which could cause injury or death. Provides that patients’ identitie [sic] should not be disclosed.
This Court stated in Evans v. Firestone, 457 So.2d 1351, 1355 (Fla.1984), “[T]he ballot summary is no place for subjective evaluation of special impact. The ballot summary should tell the voter the legal effect of the amendment, and no more. The political motivation behind a given change must be propounded outside the voting booth.” Id. Opponent argues that the “medical malpractice” and “including those which could cause injury or death” language is superfluous, as the comments are not necessary to describe the amendment. As support for its argument, opponent cites to Evans. In Evans, this Court held that the editorial comment, “thus avoiding unnecessary costs,” in a summary judgment reform proposal violated the rules governing the ballot summary. See Evans, 457 So.2d at 1355. The Court noted in Evans that the “unnecessary costs” statement was “hotly contested” and “no logical explanation was given of how a constitutional summary judgment rule would be more effective in avoiding costs than is the existing summary judgment rule.” Id. Although the “medical malprac *623 tice” and “injury or death” comments may not be necessary to the summary, they do accurately describe the proposed amendment.

k- Misleading title and summary

Opponent argues that the statement that “[cjurrent Florida law restricts information available to patients related to investigations of adverse medical incidents” is misleading. It argues that while there is no open-ended constitutional right to the information, there are existing methods to obtain this information. For example, patients in litigation can obtain redacted records of relevant adverse incidents, and patients can obtain trend information on adverse medical incidents in the state from the Agency for Health Care Administration.
Additionally, opponent argues that the title “Patients’ Right to Know About Adverse Medical Incidents” suggests that patients currently have no right to “know about adverse medical incidents.” It asserts that, to the contrary, patients can receive information relating to their own incident.
Opponent’s arguments are without merit. The summary of the amendment states that Florida law “restricts” information concerning adverse medical incidents. This language is consistent with opponent’s own assertion that patients are entitled to receive information in only certain circumstances. By opponent’s own admission, access to this information is “restricted.” The amendment creates a broader right to know about adverse medical incidents than currently exists.

5. Inconsistent language in the title and summary

Opponent argues that the title and summary are inconsistent with the language of the actual amendment. The amendment states that the “identity of patients ... shall not be disclosed,” while the summary states that the amendment “provides that patients’ identitie [sic] should not be disclosed.” Opponent argues that while the term “shall” is, to most people, a mandatory instruction, the term “should” is more vague. Thus, reasonable voters could assume that the use of the term “should” means that nondisclosure is the ideal, but that under some circumstances patients’ identities may be available. We conducted an in-depth analysis of a similar inconsistent language issue in Advisory Op. to Att’y Gen. re Amendment to Bar Government from Treating People Differently Based on Race in Public Education, 778 So.2d at 897. The question in such a case is whether the discrepancy between the terms is material and misleading. Given the context in which “should” is used in the ballot summary, we do not believe the language will be misleading to voters.
V. CONCLUSION
For the reasons stated, we hold that the initiative petition and proposed ballot title and summary meet the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2003). Accordingly, we approve the amendment for placement on the ballot. We note, however, that no other issue is addressed here, and this opinion should not be construed as expressing either favor for or opposition to the proposed amendment. No motion for rehearing will be permitted.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

. The only brief filed in opposition to the amendment was filed by the Florida Dental Association. The sponsor of the amendment, Floridians for Patient Protection, filed a brief in support of the amendment.

. Compare Save Our Everglades, 636 So.2d at 1340 (finding a single-subject violation where the amendment would have performed functions of each branch of government and created a virtual fourth branch of government) with Evans, 457 So.2d at 1354 (holding that the proposed amendment affected the function of both the legislative and the judicial branches of government, i.e., two provisions of the amendment limited a defendant’s liability, thus performing an essentially legislative function, while a third provision would have written the summary judgment rule into the constitution, thus affecting a function of the judiciary).