LAMBERT, J.
The Nemours Foundation ("Nemours") petitions for certiorari relief, requesting that this court quash the trial court's order that required it to produce certain documents that Nemours claims are protected from disclosure under the attorney-client privilege. Concluding that the order under review lacks the requisite detailed findings addressing this specific privilege claim, we grant the petition, quash the order without prejudice, and remand for further proceedings.
Respondents, Xiomara Martinez Arroyo and Ramon Luis Aponte, are the *210 parents of the minor child, Ramon Aponte. Arroyo, in both her individual capacity and as a natural guardian for her son, and Aponte, in his individual capacity, sued Nemours for damages resulting from a medical procedure they allege was performed negligently on their child at the Nemours Children's Hospital. During discovery, Respondents requested that, among other things, Nemours produce to them copies of all adverse medical incident records including what they referred to as "Amendment 7 records."[1] Following the filing of objections, motions, and privilege logs by the respective parties, the trial court conducted an in camera review and thereafter entered the subject order overruling Nemours's objections and directing it to produce what amounted to written statements provided by five separate Nemours employees to its in-house counsel.[2] The court found these documents to be discoverable "fact work product"[3] that did not "fall under attorney-client privilege." Nemours argues that disclosure of these records is unwarranted and will cause it immediate irreparable harm because the documents are protected by the attorney-client privilege, which Nemours contends was not affected by the passage of Amendment 7. Nemours separately argues that the trial court's order lacks detailed factual findings required prior to disclosure of privileged attorney-client communication.
The issue framed for our consideration is whether written communications that may fall within the ambit of the attorney-client privilege are nevertheless discoverable under Amendment 7 if they contain information relating to an adverse medical incident. In Advisory Opinion to the Attorney General Regarding Patients' Right to Know About Adverse Medical Incidents , 880 So.2d 617 (Fla. 2004), in which the Florida Supreme Court reviewed and ultimately approved Amendment 7 and its ballot title and summary for placement on the November 2004 ballot, the court observed that "the amendment does not expressly affect ... the attorney-client privilege, and there is no evidence of any intent to do so." Id. at 621. Recently, the Florida Supreme Court held that based upon its plain language, "Amendment 7 was aimed at eliminating all discovery restrictions on 'any records ... relating to any adverse medical incident.' " Edwards v. Thomas , 229 So.3d 277, 287 (Fla. 2017) (emphasis in original) (quoting Art. X, § 25, Fla. Const.). In that case, however, while emphasizing the breadth, scope, and intent of Amendment 7 to allow patients to obtain all adverse medical incident reports, the court nevertheless determined that based upon the records before it, there was no need to address the applicability of the attorney-client privilege as it relates to Amendment 7. Id. at 293. While Florida district courts have suggested that Amendment 7 does not abrogate the attorney-client privilege, see, e.g. , *211 Morton Plant Hosp. Ass'n v. Shahbas ex rel. Shahbas , 960 So.2d 820, 825 (Fla. 2d DCA 2007), neither they nor the Florida Supreme Court have squarely addressed the issue.[4]
Florida's attorney-client privilege, codified at section 90.502, Florida Statutes (2017), extends to communications between employees of a corporate client and in-house general counsel, whether oral or contained in documents. Ford Motor Co. v. Hall-Edwards , 997 So.2d 1148, 1153 (Fla. 3d DCA 2008). The burden of establishing the existence of the attorney-client privilege is on the party asserting it. Coffey-Garcia v. S. Miami Hosp., Inc. , 194 So.3d 533, 537 (Fla. 3d DCA 2016). Nemours argues that the five documents in question were prepared by its respective employees at the specific behest of its in-house counsel to assist counsel in providing his legal analysis of the issues involved in Respondents' claims. Nemours contends that the amended affidavit filed by its in-house counsel, received and considered by the trial court without objection, shows that the documents now ordered to be disclosed fall within the following five-prong criteria established by the Florida Supreme Court in Southern Bell Telephone & Telegraph Co. v. Deason , 632 So.2d 1377 (Fla. 1994), for use by courts when analyzing whether a communication by employees of a corporation to corporate counsel is protected by the attorney-client privilege:
(1) the communication would not have been made but for the contemplation of legal services;
(2) the employee making the communication did so at the direction of his or her corporate superior;
(3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
(4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
(5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.
Id. at 1383. Nemours argues that through its in-house counsel's amended affidavit, which tracks the five factors in Southern Bell , it has met its burden to show that the documents are protected by this privilege and is therefore entitled to certiorari relief. See Seminole Cty. v. Wood , 512 So.2d 1000, 1001 (Fla. 5th DCA 1987) ("[C]ertiorari is the appropriate vehicle to review an order requiring a party to produce documents or disclose information for which a privilege is asserted.").
In Knapp , we recently held that a trial court must make specific detailed findings addressing each privilege claim before ordering production because "[s]uch findings are necessary for meaningful appellate review." 234 So.3d at 848 ; see also Dismas Charities, Inc. v. Dabbs , 795 So.2d 1038, 1039 (Fla. 4th DCA 2001). Here, as to Nemours's claim of attorney-client privilege, the trial court simply found that these five documents at issue did not "fall under attorney-client privilege." The court did not address why, in light of Nemours's in-house counsel's affidavit, these documents were not protected by the attorney-client privilege. Therefore, because the *212 requisite specificity under Knapp is lacking, we quash the order under review without prejudice. As a result, we presently decline to address whether Amendment 7 mandates the production of documents allegedly protected by attorney-client privilege.
Upon remand, if the trial court again determines that these five documents do not come within the attorney-client privilege, it must make specific, detailed findings to support its ruling. Alternatively, if the court concludes that these documents are attorney-client privileged communications, then it must separately decide whether under Amendment 7, the documents nevertheless are to be disclosed to Respondents. See McGauley v. Goldstein , 653 So.2d 1108, 1109 (Fla. 4th DCA 1995) ("In the absence of ... district court precedent, the [trial] judge must make an independent exercise of judgment.").
PETITION for WRIT of CERTIORARI GRANTED; ORDER QUASHED, without prejudice; REMANDED for further proceedings.
EVANDER and HARRIS, JJ., concur.

In the November 2004 election, the voters were tasked with deciding, among other things, whether the Florida Constitution should be amended to provide patients with "a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." Listed as Amendment 7 on the ballot (hence, the reference to "Amendment 7 records"), it was approved by the electorate and is now Article X, Section 25 of the Florida Constitution.

These documents have been filed under seal with this court.

"Fact work product traditionally protects that information which relates to the case and is gathered in anticipation of litigation." State Farm Mut. Auto. Ins. Co. v. Knapp , 234 So.3d 843, 849 (Fla. 5th DCA 2018) (citing State v. Rabin , 495 So.2d 257, 260 (Fla. 3d DCA 1986) ).

The aforementioned advisory opinion of the Florida Supreme Court on Amendment 7 is not binding precedent on this issue. See Ray v. Mortham , 742 So.2d 1276, 1285 (Fla. 1999) ("[A]lthough our advisory opinions are not strictly binding precedent in the most technical sense, only under extraordinary circumstances will we revisit an issue decided in our earlier advisory opinions.").